| | |
|---|---|
| 22 | 434 |
| 34 | 382 |
| 34 | 596 |
| 22 | 434 |
| 38 | 97 |
| 22 | 434 |
| 43 | 327 |
| 22 | 434 |
| 44 | 168 |
| 22 | 434 |
| 49 | 514 |
| 22 | 434 |
| 56 | 387 |
| 22 | 434 |
| 65 | 359 |
| 65 | 360 |

# WHEELING.

## CLAFLIN & CO. v. FOLEY et als.

Submitted June 26, 1883—Decided November 10, 1883.

1. A deed, conveying a stock of goods and merchandise and notes and accounts of a merchant to a trustee to secure the payment of notes not then due, which provides that said conveyance shall cover "such goods and merchandise as may be added to said stock, from time to time, by the grantor and brought into the store in course of business or to take the place of such goods as may hereafter be sold," but does not authorize the trustee to take possession or control of said goods until the grantor has made default in the payment of one or more of said notes and has been requested to do so by the holder or holders of such note or notes, is as against the unsecured creditors of the grantor fraudulent and void on its face, although it provides that the "trustee, by himself or by his agent or attorney, shall at once take possession" of the notes and accounts transferred by such deed and collect the same for the benefit of the trust-creditors. (p. 439.)

2. Nor is such deed validated or its character affected by the fact, that subsequent to its execution and on the same day a second trust-deed is made between the same grantor and grantee, conveying the same goods and merchandise, to secure other and different *cestuis que trust*, which authorizes the trustee to take possession of said goods and merchandise at once, "and manage and control the same for the benefit and advantage of the parties secured and indemnified by the deed." (p. 441.)

3. Three trust-deeds are made between the same grantor and trustee on the same property; the second is declared to be subject to the rights of the creditors secured in the first, and the third expressly refers to the first and mentions the creditors therein secured; and the creditors secured are different in each deed; and the first deed at the suit of unsecured creditors is declared to be fraudulent and void on its face as to the creditors of the grantor. HELD:

   I. That said second and third deeds convey only the equity of redemption in the property mentioned in the first deed;

   II. That the plaintiffs by their suit and charge thereby obtained on the trust-property acquired a preference over the creditors secured in said second and third deeds to satisfaction out of the trust-fund to the extent of the debts secured in the said first deed. (p. 442.)

The facts of the case are sufficiently stated in the opinion of the Court.

*Van Winkle & Ambler* for appellants.

*John A. Hutchinson* and *Cole & Miller* for appellees.

Snyder, Judge:

On the 6th day of October, 1881, Hugh G. Foley, of the city of Parkersburg, executed to "John B. Specker, of the city of Cincinnati and State of Ohio, trustee," a trust-deed by which, after stating therein that he "is justly indebted to the firm of Specker, Buddeke & Co, of the city of Cincinnati, in the sum of six thousand three hundred and forty-four dollars and thirty-six cents," and "to the firm of Young, Kimmell & Diggs, of Baltimore, in the sum of one thousand six hundred and twenty-seven dollars and twenty-seven cents," for which he has, as of the date of said deed, executed to the former firm his four notes of one thousand five hundred and eighty-six dollars and nine cents each, and to the latter his four notes of four hundred and six dollars and eighty-two cents each, due respectively in fifteen, forty-five, seventy-five and one hundred and five days after date, with interest, and negotiable and payable at the First National Bank of Parkersburg, the said Foley sold, assigned and conveyed to the said John B. Specker, trustee, "all of the stock of goods and merchandise of and belonging to the said party of the first part, being and consisting of a stock or lot of dry goods and notions, hats and caps, boots and shoes, jewelry and cloaks, now contained in the store-room occupied by the party of the first part in what is known as the 'Opera House Block,' on Market street, in the city of Parkersburg, and county of Wood and State of West Virginia, and also such goods and merchandise as may be added to said stock from time to time by the said party of the first part and brought into said store in course of the business or to take the place of such goods as may be hereafter sold; also all and singular the notes, books, accounts and bills receivable of and belonging to the party of the first part, a list or schedule of which is hereto attached and made part of this deed and marked 'Hugh

G. Foley—Schedule A.'—in trust, however, to secure the payment of the said several notes hereinafter (hereinbefore) mentioned and described, and every one thereof as it may fall due, and any and all renewals thereof in case any one or more of them should be renewed, and if default be made by the said Foley in the payment of any one or more of said notes, then it shall be the duty of the said trustee, when requested by the holder or holders of any such note or notes, to take possession of the said stock of goods and make sale thereof at a public auction in all things as is required by law.   And it is further stipulated and agreed that the said trustee, by himself or by his agent or attorney, shall at once take possession of the said notes, accounts and bills receivable hereby assigned and conveyed; and collect the same in such manner as in his judgment he may think best for the interest of all parties interested in this trust, and he shall keep a strict and careful account of such collections and hold the same, or so much as may be necessary thereof, to meet the said notes as they may mature, deducting the reasonable charges and expense of this trust, and any surplus of or arising from said collections, if any, he shall pay to the said party of the first part."

This deed, which for convenience I shall call "deed No. 1," and also the schedule therein referred to, was duly recorded in Wood county on the day of its date.

By another deed, which I shall call "deed No. 2," of the same date and recorded in said county on the same day, the said Foley sold and conveyed the same stock of goods and merchandise to the said John B. Specker, trustee, in trust to secure the payment of certain unmatured notes, therein described, due to the Parkersburg National Bank and to indemnify John O'Brien, Thomas Murphy and Thomas Hughes & Co. as his endorsers on said notes.   By this deed "the party of the second part (the trustee) is hereby authorized to take possession at once of the property hereby conveyed, and to manage and control the same for the benefit and advantage of the parties secured and indemnified by the deed, subject to the rights of the creditors secured by a former deed of trust which the parties of the first part have this day executed to the said John B. Specker, trustee, to the end that the said

several notes herein mentioned may be paid at the maturity thereof out of the proceeds of the trust property hereby conveyed."

And by a third deed, "No. 3," dated and recorded in said county, on October 7, 1881, the said Foley conveyed to said John B. Specker, trustee, all the goods and merchandise, notes and accounts, conveyed by the said "deed No. 1," in trust to secure the payment of certain other unmatured notes therein mentioned, due to the said Parkersburg National Bank on which said Foley is endorser.

And the said Foley, being indebted to H. B. Claflin & Co. to an amount exceeding two thousand six hundred dollars for goods purchased from them by him before the date of said "deed No. 1," they, on November 5, 1881, brought this suit in the circuit court of Wood county against said Foley, John B. Specker, trustee, the *cestuis que trust* in said several deeds and others to set aside said "deed No. 1," and to subject the property and *choses in action* therein mentioned to the payment of their debt. The plaintiffs charge in their bill that the debts due from said Foley to the beneficiaries in said deed were, at the date of its execution, in fact, greatly less than the amounts therein secured to them; that the said deed was made with intent to delay, hinder and defraud the plaintiffs and other unsecured creditors of said Foley, and that the said John B. Specker, trustee, had notice of, and participated in, said intent, and that the said deed is, therefore, fraudulent and void as to them. They pray for an injunction to restrain the grantor, trustee and beneficiaries in said deed from disposing of, transferring or interfering with the property therein mentioned, and for the appointment of a receiver to take charge of said property, &c., and for general relief.

The bill was sworn to and an injunction awarded as prayed for therein. The defendants, the grantor, trustee and *cestuis que trust* in said "deed No. 1," appeared and filed their demurrer and several answers to the bill.

The said defendants in their respective answers aver that the debts mentioned and the amounts secured to them respectively, in said deed, were, at the time of its execution, *bona fide* and justly due as therein stated, and they, each severally,

positively, directly and emphatically deny that said deed was made with intent to delay, hinder and defraud the plaintiffs or any creditor of said Foley; and especially do the trustee and *cestuis que trust* deny that they or either of them participated in, or had any notice of such intent, if any such existed; and they specifically deny every allegation of fraud or collusion contained in the plaintiffs' bill.

The cause was heard on December 12, 1882, upon the bill, demurrer thereto, answers and replications thereto, depositions and other proofs, and the plaintiffs not insisting then upon the appointment of a receiver, inasmuch as the property and goods had been disposed of and turned into money by the trustee, the court entered a decree overruling the demurrer to the bill and adjudged that the said "deed No. 1" was valid and binding and that the plaintiffs are not entitled to have the same set aside. The plaintiffs' injunction was then dissolved and the cause referred to a commissioner to settle the accounts of the trustee, &c. From and to this decree the plaintiffs obtained from this Court an appeal and *supersedeas*.

The record is quite voluminous, containing much documentary evidence and many depositions filed and adduced by the plaintiffs tending strongly to establish, independently of the stipulations in said "deed No. 1," that the said deed was made by the grantor for the purpose and with the intent to delay, hinder and defraud his creditors, and that the trustee had notice of such intent. But this Court, being clearly of opinion that said deed is fraudulent and void as to creditors of the grantor on its face, it is unnecessary to decide whether or not the facts and circumstances shown by the proofs in the cause, aside from the terms of the deed itself, conclusively establish such a fraudulent intent in the parties thereto as would make said deed void as to the plaintiffs and other creditors of said Foley. It may be remarked, however, that the trustee was a non-resident of the State and a member of the firm of Specker, Buddeke & Co., the creditors holding nearly four-fifths of the debts secured therein; that the trustee was not only made such in the deed which secured the debt of his firm, but he was also made trustee in two other trust-deeds to secure resident creditors in whose debts he had no interest; that he, on behalf of his firm in

person, and Young, Kimmell & Diggs by their agent, were present at the time and actively participated in procuring the execution of the deed and evidently knew much about its object and purposes which they could have readily explained if the transaction had been fair and legitimate, yet notwithstanding the fact that the whole transaction was vigorously assailed and extraordinary conduct shown in the disposition of the trust-property, neither the grantor nor the trustee, the said agent nor any member of either of the firms therein secured testified in the cause, nor did they even produce the original evidences of their debts or furnish any explanation of the transaction or the reasons for the very questionable manner in which the trust-property was disposed of after the deed was executed, other than such as are contained in their several answers to interrogatories submitted with the plaintiffs' bill as to which they could not be cross-examined. These circumstances and this conduct furnish grounds for great suspicion if they do not constitute conclusive evidence of actual fraud and collusion—*Cramm* v. *Mitchell*, I Sandf. Ch. 251; *Goshorn* v. *Snodgrass*, 17 W. Va. 717, 773; 2 Lom. Dig. 327; Bump. on Fr. Con. (3d ed.) 51, 376; *Cox* v. *Platt*, 32 Barb. 126; *Pierce* v. *Merritt*, 70 Mo. 275; *Graham* v. *Furber*, 78 E. C. L. 410; *Glenn* v. *Glenn*, 17 Iowa 498; *Smith* v. *Brown*, 34 Mich. 455; *Gay* v. *Parpart*, 106 U. S. 679.

The deed here in question conveys the stock of goods and notes and accounts of the grantor, a merchant, to secure the payment of notes *to become due* fifteen, forty-five, seventy-five and one hundred and five days after the date of the deed, with a provision for the indefinite renewal of said notes. The trustee is not authorized to take possession of or sell the goods until the grantor has made default in the payment of one or more of said notes, and not even then unless requested by the holder or holders of such note or notes. It is further stipulated that the conveyance is to embrace "such goods and merchandise as may be added to said stock from time to time by the grantor and brought into the store *in course of business, or to take the place of such goods as may be hereafter sold.*" The clear intent and meaning of these provisions are that the grantor was to remain in possession of the goods and continue to prosecute his business by selling

the goods in the same manner that he did before the conveyance. And not only this, but he could purchase other goods to supply the place of such as he might sell, and then sell those in the same way. Thus by paying off the notes secured as they should become due, or renewing them, he could prevent even the creditors secured from taking possession of his goods or interfering with his business; and unless the secured creditors should request the trustee to take possession and sell the goods he could not do so, although the grantor failed to pay any part of the said notes. Thus of his own volition the grantor had the absolute disposal of the goods conveyed for fifteen days at least, and with the consent of his favored creditors, those secured by the deed, he could have such absolute control for an indefinite time; and in the meantime not only would the goods in the store at the date of the conveyance be protected from the pursuit of his unsecured creditors, but also such as he might thereafter bring into the store to take the place of those sold by him in the course of his business. The deed does not even require the grantor while thus carrying on his business and selling the trust-property to keep any accounts or apply the proceeds of his sales to the payment of the debts secured. He is left in the absolute control of the goods without restriction, limitation or accountability to any one. What possible security does a deed encumbered with such stipulations furnish? In the language of Carr, J., in *Lang* v. *Lee*: "Is it not completely a *felo de se*? A security is taken on goods, and they are left in the possession of the debtor * * * with a power to sell and dispose of them as he may think proper; no check whatever. Does not this resolve the whole matter into personal security? And is the debtor more bound to account for the money than he was before the debt?"—3 Rand. 423. "Can such a contract between debtor and creditor, the avowed purposes of which rest for their execution upon the good faith of the former, unguarded even by a single covenant, and which may be entirely frustrated by his imprudence or misfortune in trade, be regarded in legal contemplation, as constituting a valid security or specific lien on the property conveyed as against any creditor postponed by it?" *Sheppards* v. *Turpin*, 3 Gratt. 399. Such a convey-

ance is certainly more a protection to the debtor than it is a security to the creditor, and is therefore condemned as fraudulent and void as to the creditors of the grantor by numerous decisions in Virginia and this State—*Lang* v. *Lee*, 3 Rand. 410; *Barnes* v. *Janvey*, 11 Leigh 100; *Sheppards* v. *Turpin*, 3 Gratt. 374; *Spence* v. *Baywell*, 6 *Id.* 444; *Addington* v. *Ethridge*, 12 *Id.* 436; *Kuhn* v. *Mack*, 4 W. Va. 194; *Garden* v. *Bodering*, 9 *Id.* 121.

But it may be supposed that inasmuch as said deed stipulates that the "trustee, by himself or by his agent or attorney, shall at once take possession of the said *notes, accounts and bills receivable*, hereby assigned and conveyed, and collect the same," that the conveyance, though void as to the goods, is valid as to such notes, accounts and bills. Such is not the case. It has been settled by numerous decisions that, where by the terms of the deed it is rendered fraudulent on its face in any respect, the law will conclusively presume that all parties claiming under such deed had notice of and participated in such fraud; and the intention disclosed by its terms will be imputed to the whole instrument and all the parties connected with it and the deed will be declared void *in toto*. *Garland* v. *Rives*, 4 Rand. 310; *Henderson* v. *Henton*, 26 Gratt. 926; *Perry* v. *Shen. Nat. Bank*, 27 *Id.* 755; *Sands* v. *Codwise*, 4 Johns. 536; S. C. 4 Am. D. 305; *Bean* v. *Smith*, 2 Mason 252–96; *Clements* v. *Moore*, 6 Wall. 313.

On the same day that said deed was executed the grantor executed "deed No. 2," conveying to the same trustee for the benefit of other creditors, the stock of goods and merchandise, but not the *choses in action*, conveyed by the first deed, and by the terms of the said second deed the trustee is "authorized to take possession at once of the property hereby conveyed and *manage and control* the same for the benefit and advantage of the parties secured and indemnified by the deed." Does the execution of this deed and the provision therein authorizing the trustee to take immediate possession of, and to manage and control the property, in anywise affect or validate said "deed No. 1," which, as we have seen, taken alone, is void on its face? I think not. It appears that the grantor and the grantee as well as the subject conveyed are the same in both deeds. If, therefore, the two

deeds are taken and considered as parts of one and the same contract or transaction, then the first being fraudulent and void on its face, the whole contract or transaction, according to the principle just announced and the authorities cited, must be held to be fraudulent and void; and the second deed being thus considered a part of that transaction it must share the fate of the first deed and in that view both deeds would be fraudulent and void.   If, however, the more favorable and perhaps the more correct view be taken, that the two deeds constitute distinct and separate transactions, then the first can derive no aid from the second, and being void, as we have shown, when considered alone, it could not be validated by the second which forms no part of it.   As the said "deed No. 2" is not assailed by the plaintiffs in their bill, it would be improper to express any opinion in regard to it, whether taken alone or in connection with said "deed No. 1," and as a part of the same scheme or contract; and what I have said has no reference to that question.

The observations just made in regard to the effect, or rather absence of effect, of the execution of "deed No. 2" on the *status* of said "deed No. 1," apply with equal force and propriety to the aforesaid "deed No. 3."

But, inasmuch as said "deed No. 2," was expressly made "subject to the rights of the creditors secured" by "deed No. 1," they, by their contract, acquired simply the equity of redemption in the goods and merchandise conveyed.   When they took their conveyance they took it subject to the payment of the two sums of six thousand three hundred and forty-four dollars and thirty-six cents and one thousand six hundred and twenty-seven dollars and twenty-seven cents mentioned in said "deed No. 1," and, although said deed was fraudulent on its face and the creditors therein named are not entitled to the benefit of said sums, still, as it was valid between the parties thereto and the trustee and creditors in said second deed expressly excepted said amounts from their security, they are by their contract precluded from taking any benefit therefrom under the trust-deed to them.   The said first deed, being fraudulent on its face, the law conclusively presumes that they knew that fact when they took their deed, and that it was their intention to

except those amounts for the benefit of any persons who should in law show themselves entitled thereto.    *Tate* v. *Liggat*, 2 Leigh 84.

And while said "deed No. 3" contains no such reservation, in terms, in favor of the creditors secured in the said "deed No· 1," it does expressly refer to said deed and mention the creditors secured in it.    The grantor and trustee in the two deeds are the same.    The implication, therefore, is equivalent, it seems to me, to an *express agreement* that said "deed No. 3" should operate only as a conveyance of the equity of redemption in the goods and *choses in action* therein mentioned.    It must, therefore, receive the same interpretation that we have placed upon said "deed No. 2."    And being so interpreted, the plaintiffs in this cause and other creditors of said Foley, if any such there be, who, by their superior diligence have made their debts charges on, or acquired liens upon, the trust-property or its proceeds, to the extent of their debts, not, however, exceeding the said sums of six thousand three hundred and forty-four dollars and thirty-six cents and one thousand six hundred and twenty-seven dollars and twenty-seven cents, mentioned in "deed No. 1," are entitled to a preference over the *cestuis que trust* in said deeds No. 2 and No. 3 against the said trust-property or its proceeds. *Wallace* v. *Treakle*, 27 Gratt. 479; *Hughes* v. *Hamilton*, 19 W. Va. 367, 393.

For the foregoing reasons the said decree of the circuit court of Wood county of December 12, 1882, is reversed with costs to the appellants against the appellees, Hugh G. Foley, Specker, Boddike & Co. and Young, Kimmell & Diggs; and this cause is remanded to said court for further proceedings to be had therein according to the principles announced in this opinion.

DECREE REVERSED.    CAUSE REMANDED.