# WHEELING.

SHATTUCK & JACKSON v. KNIGHT & BROS. et al.

Submitted January 22, 1885.—Decided April 11, 1885.

1. A trust-deed by insolvent debtors, partners, conveying their goods, wares and merchandise in their store-rooms and the goods, wares and merchandise, which they might thereafter purchase and put in said store-rooms to secure certain debts of the firm, and making no provisions as to the possession of said goods, wares and merchandise, but simply providing, that, if all said debts were not paid within thirty days, said property after being advertised for thirty days might be sold by the trustee for cash, is *per se* fraudulent on its face and void as to all the creditors of the grantors. (p. 595-600.)

2. When a paper purporting to be a deed conveying land to secure debts of the grantors appears to have been executed not under the seals of the grantors, it does not create a lien, so as to defeat a subsequent attaching creditor of the grantors. Such a paper is in substance nothing more than a contract for a lien upon the land to be created by a deed of trust. (p. 601.)

GREEN, JUDGE, furnishes the following statement of the case :

On February 2, 1884, C. H. Shattuck and J. M. Jackson Jr., partners in business as Shattuck & Jackson, sued out an attachment in the circuit court of Mason county against S. N. Knight and G. W. Knight, partners as S. N. Knight & Brother, for $366.19. This attachment was levied the same day on town-lots Nos. 164 and 165 in Clifton and lots Nos. 40 and 41, in Grantsburg, and also on the goods, &c., particularly specified in their store. The affidavit, on which this attachment was based, stated, that Shattuck & Jackson were about to institute a suit in equity in the circuit court of Mason county against S. N. Knight & Bro. for the recovery of debts due by a promissory note on February 10, 1884, and that they were entitled in this suit to recover this $366.19 with interest thereon. The grounds for issuing the attachment are stated to be : First, that the defendants had assigned and disposed of their property with intent to defraud their creditors ; and secondly, that they had fraudulently concealed

their property and choses in action. The facts relied on to sustain these grounds for the attachment were, that they had executed a deed of trust to Thomas G. Hogg, trustee, dated January 9, 1884, conveying those lots in Clifton and Grantsburg in said county and all their goods, wares and merchandise then in their store-room in Clifton and the goods, wares and merchandise, which they might thereafter purchase and have in their said store-room, to secure certain alleged debts, a copy of which deed of trust is filed with the affidavit; that on January 12, 1884, they executed what was called a deed of trust but was not, because it was not a deed, being an unsealed paper, which pretended to convey to the said trustee the four lots aforesaid to secure a pretended debt to John W. Bates of $2,352.16, a copy of which paper is also filed with this affidavit. The affiant also asserts, that he is informed and believes, that they do not owe said Bates anything; that on January 15, 1884, they made another deed of trust to H. G. Nease, trustee, conveying their stock of goods to secure the payment of a certain promissory note to C. E. Hogg and others; copy of this deed of trust is also filed; and lastly, that on January 17, 1884, they executed to the last named trustee another deed of trust conveying the same stock of goods to secure three notes to W. E. Edwards, one for $200.00, due February 8, 1884; another for $350.00, due February 27, 1884, and the third for $200.00, due March 1, 1884, and a copy of this deed was also filed, all of them having been · recorded.

The affiant alleges, that after the making of these deeds of trust the grantors continued in possession of this stock of goods carrying on their business, trading and selling their goods, wares and merchandise as before the making of the deeds; that they have many notes and accounts, which they refuse to disclose, and that, when called upon to secure the plaintiff's claim, they admitted, they had such notes and accounts, but said nobody could find where they were, and their books did not show who owed them nor in what amount.

The bill of the plaintiffs was filed at April rules, 1884. It sets out the facts stated in this affidavit and alleges, that said deeds of trust including the one, which was not sealed, were all fraudulent and void and were intended to delay, hinder

and defraud the creditors of S. N. Knight & Bro.   It files the affidavit, on which the attachment was based, and copies of all the deeds of trust as exhibits. The following parties were made defendants by the bill: S. N. Knight, George W. Knight and the trustees and *cestuis que trust* in the different deeds of trust.

The defendants filed answers denying, that there was any fraud in the deeds of trust, or that S. N. Knight & Bro. had continued in the possession of the goods, wares and merchandise after the execution of the deeds of trust, or were carrying on their business as merchants, trading and selling said goods as before the making of these deeds.

These answers were replied to; and depositions were taken on both sides, which prove, that the first deed of trust written and dated January 9, 1884, was written by James L. Knight, a party secured in this deed of trust and a brother to the grantors S. N. Knight & Bro., except the last clause, which secures some $877.00 to Rebecca and Margaret Somerville to be paid out of any surplus, that might remain after paying all the other debts secured by this deed of trust; and this clause was written by A. L. Knight, another brother.   It was written late on the evening of Thursday, January 9, 1884, and was acknowleged that evening before by A. L. Knight as a notary public and recorded the next morning at 11 o'clock.   The trustee in this deed was Thomas G. Hogg, the son of James A. Hogg, who with James L. Knight, a brother of the grantor, was the preferred *cestui que trust* in the deed of trust. James A. Hogg was also a brother-in-law of the grantor in this deed of trust. The trustee, Thomas G. Hogg, was also the clerk in the store of S. N. Knight & Bro., the grantors in the deed of trust.    After this trust-deed was made and recorded, the store was kept open and goods were sold with the knowledge of the trustee, the grantors and the principle *cestui que trust* till the close of the week Saturday night, January 12, 1884.   During this time there was sold out of the store to Matt S. Gibbons, a son-in-law of A. L. Knight and a nephew by marriage of the grantor in this deed, who kept a grocery store in Clifton, where S. N. Knight & Bro. did business, $125.00 worth of groceries to put in his store; and the money arising from these sales was applied to the payment of debts not secured

by the deed of trust. James L. Knight also, who drew this deed of trust and was secured in it, bought some $30.00 or $40.00 worth of goods, which were credited on his open account with S. N. Knight & Bro., which was not secured in this deed of trust.

All this was done with the knowledge of the trustee in this deed of trust, who was then acting as a clerk in the store in the employment of S. N. Knight & Brother, and, though that is not proven, doubtless with the knowledge of the other *cestui que trust*, James A. Hogg, who was the father of this trustee and clerk. He says that he heard of this deed of trust on Friday evening, when his son, the trustee, told him, and, I think, it must be inferred told him that the store was still being kept open and goods being sold by S. N. Knight & Bro., as if the deed had not been given. For this was done with the knowledge and approbation of the grantors, the trustee and the principle *cestui que trust* and, I doubt not, with the knowledge and approval of James A. Hogg, who next to James L. Knight was principally secured in this deed of trust.

There were included in this deed of trust two lots, which were the property of George W. Knight individually, worth about $800.00; and the balance of the real estate conveyed by this deed of trust was worth about $975.00, and the store goods about $4,000.00.

The firm of S. N. Knight & Bro. owed about $10,000.00, which was not secured, and had about $10,000.00 of debts due to them, of which about $2,000.00 had been collected or assigned since the giving of this deed of trust. There was no proof to show, that any of the debts secured by any of these deeds of trust were fraudulent or pretended debts. It was also proven, that the trustee in this deed of trust took possession of this stock of goods on January 14th or 15th, 1884; and it may be presumed, that after that time the store was kept open and goods sold by S. N. Knight & Bro., just as they had been before the making of this first deed of trust. There was no proof in reference to any other deeds of trust or of the circumstances under which they were made. It was also proven, that when an agent of the plaintiff in the latter part of December, 1883, was urging S. N. Knight &

Bro. to transfer to him accounts to pay the plaintiffs' debt, he was told that they intended to collect these debts themselves, and when told that somebody would attach the books of the firm, the reply was: " Let them go ahead and try it. If they do, they won't find them on the books."

This being the substance of the evidence, the court on September 16, 1884, rendered the following decree :

" This cause came on this day to be heard on the bill and exhibits therewith filed, upon the answer of the defendants thereto and the plaintiff's replications thereto, upon the depositions of witnesses duly taken and filed in this cause for plaintiffs and defendants, upon the petition of James L. Knight and James A. Hogg filed in this cause, and upon the motion of the defendants to quash the attachment awarded in this cause, and was argued by counsel. Upon consideration of all of which, the court is of opinion that the plaintiffs are not en-entitled to the relief prayed for. It is therefore adjudged, ordered and decreed that the plaintiff's bill be and the same is hereby dismissed, and that the said motion be and the same is hereby sustained, and the said attachment is hereby quashed; and it is further considered by the court that the defendants recover of the plaintiffs their costs in this behalf expended, including a statute fee of $20.00 as allowed by law; all of which is adjudged, ordered and decreed accordingly."

From this decree the plaintiffs have obtained an appeal and *supersedeas.*

*W. S. Sands* for appellants.

*Charles E. Hogg* for appellees.

Green, Judge :

The first enquiry to be made in this case is : Was the deed of trust of January 9, 1884, referred to in the bill and charged to be fraudulent, either on its face fraudulent or in fact made with intent to delay, hinder and defraud the creditors of the grantors, and was this fraudulent intent known to the beneficiaries in the deed of trust ? If either of these enquiries must be answered in the affirmative, the decree of the circuit court must be reversed, even if the attachment was improp-

erly issued and had to be quashed; for the bill would be still good, as every creditor of a debtor, whether he has a judgment or not, has a right without issuing an attachment to file a bill to set aside a fraudulent deed made by his debtor to delay, hinder and defraud him and other creditors. (Code, chapter 133, section 2.)

Was this deed of trust fraudulent *per se?* After conveying certain real estate it proceeds: " And also the following personal property, to-wit, all the goods and wares and merchandise now in the store-room of S. N. Knight & Bro (the grantor) in the town of Clifton in said county, and the goods, wares and merchandise, that they may hereafter purchase or acquire in said firm and have in said store, in trust to secure certain debts named." The deed concludes: " If all of said notes (secured) are not paid within thirty days, all of said property may be advertised and after giving thirty days notice sold for cash, or so much as will pay said notes and costs of sale." It is not claimed in the argument of counsel for the appellee, that this deed or any other deed of trust could pass the title to the goods, wares and merchandise, which the grantors might thereafter purchase and place in this store, or that the creditors of the grantor secured by this deed of trust could in a court of equity set up, that they had any lien by virtue of this deed on any such goods subsequently purchased by the grantors and placed in this store. That this is so, is obvious. But it is claimed by appellees' counsel, that the insertion of this nugatory clause in this deed of trust did not render it fraudulent *per se.* To sustain his views he refers to several authorities, most of which throw no light on this point. The most pertinent of these is *Brockenbrough* v. *Brockenbrough,* 31 Grat. 589, where it was held, that a deed of trust conveying a farm and all the grantor's horses, mules, cattle, sheep and hogs, and all such cattle, as should thereafter be placed on said farm by the grantor, to secure certain debts then due, was not *per se* fraudulent.

While the Virginia cases have especially of recent years gone much further in sustaining deeds of trust alleged to be fraudulent than the courts of West Virginia, yet I do not hesitate to say, that the simple inclusion in a deed of trust conveying existing property of the grantor of personal property,

which the grantor might afterwards acquire, would not necessarily in every case render the deed of trust fraudulent on its face; yet in some cases such a provision would render such deed of trust fraudulent *per se.* Whether in any particular case it would render the deed of trust *per se* fraudulent on its face would depend very much upon the character of the personal property conveyed and the character of that attempted to be conveyed when thereafter acquired by the grantor. If the trustee by the terms of the deed of trust is not to take possession of the personal property till an indefinite future time, and the provision, whereby after-acquired property of the grantor is attempted to be conveyed to pay trust-debts, and the inference from the character of the property conveyed and attempted to be conveyed is, that the design of the grantor clearly shown by these provisions was, when he executed the deed of trust, to hinder other creditors and at the same time not to devote any of his property then owned by him and conveyed in the deed of trust to the payment of the debts professedly secured by it, but to keep possession of it and dispose of it as he pleased, and to dispose of the proceeds as he chose, then such deed is *per se* fraudulent on its face. But if in a particular case because of the character of the property conveyed or attempted to be conveyed no such inference must necessarily be drawn, then such deed of trust is not *per se* fraudulent, because of such provision.

To which class of these cases the deed of trust under consideration belongs, I will now investigate. In so doing I will confine myself to the West Virginia authorities and those of the State of Virginia decided before the establishment of this State. They suffice to settle clearly this question; and a reference to other authorities on this point would only confuse. There are certain principles governing in cases of this description, which are well settled in this State. In the first place it is well settled, that the retention by the terms of a deed of trust by the grantor of certain kinds of personal property, such as household furniture, farming implements, libraries, &c., not perishable in its nature nor consumable in its use, which is conveyed to secure debts, and which is not to be sold for some time, does not render the deed of trust

*per se* fraudulent; and when this is the character of the property, a provision, that it shall remain in the possession of the grantor till the sale, is not even a badge of fraud unless made so by other provisions in the deed of trust or by surrounding circumstances. (*Shipwith* v. *Cunningham*, 8 Leigh. 271; *Janey* v. *Barnes*, 11 Leigh. 100; and *Cochran* v. *Paris*, 11 Grat. 348; *Klee & Bro.* v. *Reitzenberger*, 23 W. Va. 749, syl.; *Harden* v. *Wagner*, 22 W. Va. 356.) In such case a creditor not secured may hasten the sale or subject the use of the property, reserved till the sale to the grantor, by suit in equity or by a sale of such interest under his execution. (*Lewis* v. *Caperton*, 8 Grat. 148.)

But if the property conveyed by the deed of trust is of such a character, as must be consumed in the use, and by the provision in the deed it is not to be sold for a considerable time, and the grantor is to remain in possession of it till the sale, then such deed is *per se* fraudulent, for the obvious reason that the postponement of the sale for a considerable time and the retention of the possession of such property till the sale could only have been inserted for a fraudulent purpose and with a view of enabling the grantor in such deed of trust to defeat its declared purpose of having such property devoted as a security for certain specified debts. For if the grantor had really intended, that such property should be sold for the payment of specified debts, he would not have provided for its retention and use by himself for such a considerable length of time, inasmuch as such retention and use by consuming the property would defeat the professed object of the deed. The same conclusion must be reached, if the property, though not consumable in its use, is perishable in its character and could not be preserved till the time of sale. The retention of the possession of such property could not have been stipulated for by the grantor on the face of the deed except with the design of selling such property, before it perished or was greatly diminished in value, and appropriating the proceeds as he pleased; and therefore it was not intended by the deed to appropriate it, as the deed professed, to the payment of specified debts, and such deed could have been intended only to protect such property from other creditors. It is therefore *per se* fraudulent. (*Klee* v. *Reitzenberger*, 23 W. Va. 754;

*Gardner* v. *Johnson*, 9 W. Va. 403; *Gardner* v. *Bodwing*, 9 W. Va. 121; *Claflin* v. *Foley*, 22 W. Va. 434; *Lang* v. *Lee*, 3 Rand. 410; *Burns* v. *Janvey*, 11 Leigh. 100; *Sheppards* v. *Turpin*, 3 Grat. 374; *Spence* v. *Bagwell*, 6. Grat. 444; *Addington* v. *Ethridge*, 12 Grat. 436.) So if the property conveyed was a stock of goods, wares and merchandise, a provision on the face of the deed of trust, that the grantor should retain the possession thereof till sale, which is not to take place for a considerable time, would render the deed *per se* fraudulent, for the obvious reason that the mere holding possession of such a stock of goods could be of no possible advantage to the grantor or any one else, and he must have, when he executed such deed, intended to defeat its professed objects by selling the goods, wares and merchandise while in his possession and devoting the proceeds to his own use. The only object, which he could have had in making such a deed of trust, must have been to delay and hinder his creditors by preventing them from seizing the property to pay their debts. (*Kuhn* v. *Mack*, 4 W. Va. 186; *Gardner & Co.* v. *Bodwing's Administrator*, 9 W. Va. 121; *Klee* v. *Reitzenberger*, 23 W. Va. syl. 2, p. 749; *Lang* v. *Lee*, 3 Rand, 410; *Burns* v. *Janvey*, 11 Leigh. 100; *Sheppards* v. *Turpin*, 3 Grat. 374; *Spence* v. *Bagwell*, 6 Grat. 444; *Addington* v. *Ethridge*, 12 Grat. 436.)

But if the provision in the deed of trust be, that the trustee in such a case may continue the business in order to realize the trust-fund and wind up the business, the deed is not fraudulent *per se*; and if the deed further provides, that the grantor shall attend to the business under the control and direction of the trustee, that provision will not render the deed of trust *per se* fraudulent. (*Harden* v. *Wagner*, 22 W. Va. syl. 8, p. 357; *Marks* v. *Hill*, 15 Grat. 400; *Gorden* v. *Cannon*, 18 Grat. 387.) In a case where a stock of goods, wares and merchandise is conveyed in a deed of trust to secure debts, the property not to be sold for a considerable time, if there be any provisions in the deed, which clearly indicate, that the grantor, when he made it, intended to remain in possession of the property until the day of sale, such deed will be regarded as *per se* fraudulent, precisely as it would be, had there been in it an express provision, that the grantor should

remain in possession of the goods until the day of sale. If such intention appears on the face of the deed, whether it be express or implied, is entirely immaterial. (*Gardner* v. *Johnston*, 9 W. Va. 411; *Gardner & Co.* v. *Bodwing's Administratrix*, 9 W. Va. 121; *Claflin* v. *Foley*, 22 W. Va. 434; *Levesay's Executor et al.* v. *Brand et al.*, 22 W. Va. 585; *Klee & Brothers* v. *Reitzenberger et al.*, 23 W. Va. 749.)

Let us now apply these principles to the deed of trust of January 9, 1884, with a view to ascertaining, whether it be *per se* fraudulent. It does not expressly provide, that the grantors are to remain in the possession and control of the goods, wares and merchandise conveyed by the deed of trust, and which under its provisions could not be sold in less than sixty days after the deed was executed; but it appears on the face of this deed of trust as distinctly, as if it had been expressly so stated, that the grantors intended, when they executed this deed, to remain in the possession of this storeroom and of the goods, wares and merchandise and to sell and dispose of them at their pleasure. It is almost in words stated, that they intended or expected to add to this stock of goods after the execution of this deed of trust by purchasing other goods; for the deed says, "the goods, wares and merchandise that the grantors may hereafter purchase or acquire in said firm or have in said store" are thereby conveyed. Now it would be absurd to suppose, that these parties expected to purchase more goods and put them in this store simply to be sold by the trustee at public sale. This would be imposing on the grantors much trouble and loss, for of course the goods could not be sold at public auction for what they cost. One of the grantors in his deposition estimates the loss on goods, so sold at twenty-five *per cent*. It is obvious, that no such folly was dreamed of, and that in addition to the stock of goods, after the deed of trust was given, the grantors intended to sell as usual the goods so added; and of course it was designed by the grantors to mingle the goods so purchased by them with the goods, which they already had on hand. This is almost expressed on the face of the deed of trust; for it provides for the disposition of the old stock and these additions in precisely the same manner. It is further obvious, that the grantors in-

tended from time to time to sell both from the old stock of goods and from the added goods, just as they had been doing before the execution of this deed of trust. It being thus obvious on the face of this deed of trust, that, when they executed it, the grantors intended to remain in possession of the store and goods conveyed and to sell these goods just as they had been doing for at least sixty days, this deed gave to the persons professedly secured by it no real pledge of these identical goods to the payment of their debts, but was intended, as is shown on the face of the deed, to delay and hinder other creditors, and as against them it is *per se* on its face fraudulent and void. This deed of trust bears so strong a resemblance to the deed of trust in *Claflin* v. *Foley*, 22 W. Va. 434, which the Court declared *per se* fraudulent, that I regard that case as controlling this on the question now under consideration. The facts proven in this case show beyond question, that this deed of trust of January 9, 1884, was fraudulent in fact as well as in law. It was executed with a fraudulent intent; but if it had not been, as we have seen, it was *per se* fraudulent. Though executed with a fraudulent design by the grantor, it would still have been valid to secure the debts due Rebecca and Margaret Somerville, for we have no reason to believe, that they had any notice of the fraudulent designs of the grantors in this deed of trust; and if they had not, the deed of trust, if it had not been *per se* fraudulent, would have been good as to them. (*Lockhart* v. *Beckley*, 10 W. Va. 88; *Goshorn's Executor* v. *Snodgrass*, 17 W. Va. 772; *Garland* v. *Rives*, 4 Rand. 282.) But when, as in this case, the deed of trust is *per se* fraudulent, the law conclusively presumes, that all parties claiming under such deed had notice of and participated in such fraud, and no proof to the contrary will be permitted; and as this intention will be imputed to the whole instrument and all the parties connected with it, the deed will be declared void *in toto*. [*Claflin* v. *Foley*, 22 W. Va. 441; *Garland* v. *Rives*, 4 Rand. 310.) The deed under consideration must therefore be declared void not only so far as it conveys this stock of goods, but also so far as it conveys the real estate named in it. This Court must declare it for these reasons void *in toto* as against the creditors of the grantors.

As to the paper executed on January 12, 1884, by S. N. Knight and S. N. Knight & Bro., and by the wives of S. N. Knight and G. W. Knight, though it purports to convey real estate and nothing but real estate to Thomas G. Hogg, trustee, to secure a debt due John W. Bates, yet, as it was not executed under the seals of any of the grantors, it created no lien upon the lands named in it as against the plaintiffs in this cause. (*Pratt* v. *Sherrar*, 4. W. Va. 443.)

The deeds of trust executed by S. N. Knight & Bro. and S. N. Knight and G. W. Knight individually, and by their wives, dated January 15, 1884, and January 17, 1884, and duly acknowledged and recorded the same day conveyed to H. G. Nease, trustee, the goods, wares and merchandise belonging to S. N. Knight & Bro., in Clifton, West Virginia, to secure certain debts specified in the deeds. The form of these deeds of trust was that set out in the Code of West Virginia, chapter 72, section 5; and on their face they are wholly unexceptionable. Of course the wives of the grantors need not have united in them, but their uniting while perfectly useless did no harm. There is not a particle of evidence to show, that the grantors in these deeds of trust designed any fraud in executing them. Indeed the evidence shows, that after the execution of these two last deeds of trust the grantors in them never were in the possession or had any control over the goods, wares and merchandise conveyed. They are therefore valid and binding and have precedence over the plaintiffs' attachment, which was not issued or served for more than two weeks after these valid deeds of trust were executed.

The plaintiffs' attachment in this case was valid and can not be quashed and created a lien on the property, upon which it was levied, from February 2, 1884. The affidavit, on which this attachment was issued, was sufficient to authorize the issuing of the attachment; and the material facts set out to show the existence of the first ground, on which the attachment was based, were sufficient to establish this ground, that is : " that the defendants had assigned and disposed of their property with intent to defraud their creditors." This affidavit stated the execution by the defendants of the deed of trust dated January 9, 1884, and there was filed with the affi-

davit a certified copy of the deed of trust, which had been recorded. We have seen, that this deed of trust conclusively establishes the first ground for issuing the attachment. I need not consider, whether the facts stated sustain or do not sustain the second ground for issuing this attachment. But I will say, that it seems to me, they did not. This however is immaterial; for it is sufficient, that the facts stated should sustain any one of the grounds for the attachment set out in the affidavit.

The final decree of the circuit court of Mason county must be reversed; and this cause must be remanded to the circuit court of Mason county to be further proceeded with. S. N. Knight in his deposition states, that the goods, wares and merchandise of S. N. Knight & Bro., on which the attachment in this cause was levied, and which was conveyed in the trust-deeds dated January 15, 1884, and January 17, 1884, mentioned in the proceedings in this cause, have been sold by an order of the court at fifty-five cents on the dollar of their cost. No such order appears in the copy of the record as presented to this Court. But, I presume, some such order has been entered, and such sale made either of the whole or of a part of said goods, wares and merchandise. If the whole of them have not been sold, they must all be sold; and after paying the costs of sale the proceeds must be applied first to the payment of what may be due on the debt secured by the said deed of trust of January 15, 1884, and then to the payment of what may be due on the debts secured by the said deed of trust of January 17, 1884, and then to the payment of the debts of the plaintiffs in the bill named, and to the payment of all the costs of this suit incurred in the circuit court of Mason county: if the proceeds of such sale shall prove insufficient to pay all the sums aforesaid, then the said circuit court of Mason county shall order the sale of the real estate, on which the attachment issued in this cause was levied, selling first the real estate owned by S. N. Knight and G. W. Knight jointly or as partners under the name and firm of S. N. Knight & Bro., and then, if necessary, the real estate of G. W. Knight levied upon; and the proceeds of such sales shall be applid to the payment of the costs of this suit in the circuit court of Mason county and to the debt of the plaintiffs

named or such part thereof, as may remain unpaid; and such other and further proceedings shall be had, as are necessary and proper to carry out the views expressed in this opinion and are in accordance with the principles governing courts of equity. The decree to be entered in this Court must reverse, set aside and annul the decree of September 16, 1884, and the appellant must recover of the appellees other than C. E. Hogg, A. A. Holland, J. N. Casto, W. E. Edwards and H. G. Nease, the trustee, and *cestuis que trust* in said deeds of trust dated January 15, 1884, and January 17, 1884, their costs in this Court expended. And proceeding to render such decree, as the court below should have rendered, the defendants' motion to quash the attachment issued in this cause must be overruled; and said attachment must be declared a valid lien on all the property, upon which it was levied, from February 2, 1884, the day it was levied and the decree must declare, that the deed of trust marked "A." and dated January 9, 1884, filed with the affidavit on which said attachment was based, is *per se* fraudulent, and must adjudge the same null and void as against the plaintiff and all other creditors of S. N. Knight & Bro., or S. N. Knight, or G. W. Knight individually; and must further declare that the paper marked "B." filed with said affidavit, dated January 12, 1884, and purporting to convey certain real estate in trust to secure a debt due John W. Bates, not having been executed under the seals of any of the grantors or parties to said paper, creates no lien on the real estate it purports to convey as against the plaintiffs in this cause; and must further declare the two deeds of trust marked respectively "C." and "D.," and dated respectively January 15, 1884, and January 17, 1884, to be good and valid deeds of trust which created liens on the goods, wares and merchandise named in them, and on which the attachment of the plaintiffs' was subsequently levied; and must declare that said deeds of trust created liens on said goods, wares and merchandise, which have priority over the lien of the plaintiffs on the farm, and in the order of the dates of said deeds of trust. And this cause must be remanded to the circuit court of Mason county to be further proceeded with according to the principles and instructions laid down in

this opinion, and further according to the principles govern-
ing courts of equity.

Reversed.