# CHARLESTON.

BARTLES & DILLON *v.* DODD *et al.*

Submitted September 12, 1904—Decided December 6, 1904.

| 56 | 383 |
| o61 | 59 |

| 56 | 383 |
| c65 | 361 |
| 65 | 362 |
| q65 | 366 |

1.   DEED OF TRUST.—*Not Fraudulent per se.*
     A deed of trust duly recorded given on the equipment and furniture of a hotel to secure a valid debt, is not *per se* fraudulent because there is included therein a small amount of perishable property in the shape of eatables and drinkables, and made to cover the restocking of the same, nor because it is made to cover any renewals of the notes thereby secured, nor because the property is to remain in the possession of the grantor until sold. (p. 388).

2.   DEED OF TRUST.—*Not Fraudulent in Fact.*
     At common law an insolvent debtor has the right to execute a deed of trust on the equipment and furniture of a hotel to secure the purchase money thereof, or to secure the money loaned to him for the purpose of purchasing or paying for

such property, or to secure the sureties on the notes given for such loan or the renewals thereof, and such deed, if duly recorded, cannot be held to be fraudulent in fact, because of the preference given, although it may prevent other creditors from having the proceeds of a sale thereunder applied to their debts, and although it might have been held to be void as a preference under sec. 2, ch. 74, Code, if suit had been instituted in time for this purpose. (p. 392).

3.    SALE OF PROPERTY.—*Proceeds Applied.*
      Subsequent execution creditors whose debts are pre-existing or subsequent may force such property to sale, but the proceeds will be first applied to the satisfaction of the trust lien thereon. (p. 393).

4.    DEED OF TRUST—*When Fraudulent per se.*
      A deed of trust will not be held to be fraudulent *per se* unless the provisions thereof plainly show that it was not made in good faith, but only as colorable security for the alleged debts therein named. (p. 392).

Appeal from Circuit Court, Berkeley County.

Bill by Bartles & Dillon against John W. Dodd and others. Decree for plaintiffs, and Joseph H. Shaffer and David M. Shaffer appeal.

*Modified.*

FLICK, WESTENHAVER & NOLL and W. B. LINDSEY, for appellants.

FAULKNER, WALKER & WOODS and A. C. NADENBOUSCH, for appellees.

DENT, JUDGE:

Bartles & Dillon, execution creditors, instituted a suit in chancery in the circuit court of Berkeley county against John W. Dodd, their debtor, and others, among other things for the purpose of testing the validity of a certain deed of trust executed by said Dodd on certain personal property for the purpose of securing D. M. and J. H. Shaffer, as his endorsers on certain notes due the National Bank of Martinsburg. The circuit court held the deed fraudulent *per se* as to the plaintiffs' debt, and directed a sale of the property to satisfy the same, and after sale entered a further decree applying the proceeds to plaintiffs' debt. The Shaffers appeal from these decrees, and insist that

the court erred in not holding the deed of trust valid. It is as follows:

"This deed, made and entered into this 19th day of July, 1899, by and between John W. Dodd and Georgia Lee Dodd, his wife, parties of the first part, and X. Poole, trustee, party of the second part:

"Witnesseth: That the said parties of the first part do grant unto the said X. Poole, trustee, the following described personal property, all contained in and on the premises of what is now known as the Continental Hotel, in the town of Martinsburg, Berkeley county, West Virginia, N. E. corner of Public Square, to-wit: All the furniture in reading room of said hotel, consisting in part of carpet, Denning covering and paper under same, 12 high back chairs, 3 rockers, 2 leather chairs and window shades to windows and doors, writing table, etc., also the furniture in the lobby in said hotel, consisting in part of linoleum on floor, a number of chairs, settee, and office furniture and fixtures; also 16 bed room suits, including iron beds for same; also 5 other iron beds; also linen and dressing for the above mentioned beds; also 41 window shades, five dozen dining chairs, seven dining tables, all table linen and towels, three side tables, 31 curtain poles, 450 yards of carpet, 24 china chamber sets, all hotel dining room queensware, glassware, silver, flat ware, and hollow ware; all kitchen furniture and utensils, large ice box and contents, bar, bar buffet, ice box, bar fixtures, cash register, all wines and liquors, and stock for same, one hotel omnibus, one cab, one transfer wagon, three sets of harness and lots of halters, feed and provisions in general, also one bay mare named Diamond, one bay horse named John, one gray horse named Frank; also all other personal property belonging to or conected with said hotel except such personal property that was brought to said hotel from the residence of the said parties of the first part at 321 Burke street; also any property that may be hereafter acquired to take the place of the property herein mentioned. To have and hold unto the said Poole, trustee, forever.

"In trust, nevertheless, for the use, interest and purposes following, and none other, to-wit: to secure, indemnify, and save harmless D. M. Shaffer and J. H. Shaffer as endorsers on six certain negotiable promissory notes, made by the said

John W. Dodd, and endorsed by the said D. M. Shaffer and J. H. Shaffer, all of which said notes are negotiable and payable at the Ntaional Bank of Martinsburg, West Virginia, and were discounted at said bank, one of said notes bearing date May 23rd, 1899, for the sum of $500.00, payable sixty days after date, and one bearing date June 19th, 1899, for the sum of $500.00, payable ninety days after date, and one bearing date the 17th day of June, 1899, for the sum of $500.00, payable ninety days after date, and one bearing date June 22nd, 1899, for the sum of $500.00, payable three months after date, and one of said notes bearing date July 15th, 1899, for the sum of $800.00, payable ninety days after date, also one bearing date the——day of——,1899, for the sum of $200.00, payable ——days after date; the said notes aggregating $3,000.00; also to secure, indemnify and save harmless the said D. M. Shaffer and J. H. Shaffer on any other note or notes given in place or renewal of the above notes, or any part of the same until the same is paid;.also to secure D. M. Shaffer the payment of a certain negotiable promissory note bearing date the ——day of——, 1899, made by the said John W. Dodd, for the sum of $124.43, with interest from date, payable to the order of D. M. Shaffer, ——months after date. It is expressly understood between the parties to this deed that should default be made in the payment of the above mentioned and described notes, or any part of same, or the interest, or any part of same, or of the interest on any renewal or note given in place of same, or of any of the covenants herein mentioned, so as to cause any liability or expense to the said endorsers as aforesaid, then upon written notice of such default, be given to the said Poole, trustee, of such default by the said D. M. Shaffer or J. H. Shaffer, or any one of them, then the said X. Poole, trustee, shall proceed to make sale of the property herein conveyed at public auction to the highest bidder, either on the premises of the said hotel, or any place deemed best by the said trustee, after first having advertised the time, terms and place of sale for four successive weeks in some newspaper published in the said county of Berkeley upon such terms as may be deemed best by such trustee, and from the proceeds of such sale the said trustee shall first pay all costs and charges, attending the execution of this trust, including a commission of five per cent.

on the first $300.00, and two per cent. on the balance of the amount for which said property is sold to said trustee for his services; and he shall pay, second, the indebtedness or notes hereinbefore described, or the amount for which endorsers have become liable, including costs and expenses to which they are subjected by reason of such default having been made, and the residue, if any, shall be paid by the said trustee to the said parties of the first part, their heirs and assigns. It is expressly understood and agreed between the parties of this deed that the said John W. Dodd shall have or cause to have the property herein conveyed insured in some good, solvent insurance company in a sum of not less than $2,500.00, with policy so endorsed that loss, if any, shall be payable to the said D. M. and J. H. Shaffer, as their interest may appear. It is also understood and agreed between the parties to this deed that the parties of the first part shall retain possession of the property herein conveyed unless default shall be made in the covenants herein contained. The said trustee shall have power to act by agent or attorney in the execution of this trust.

"Witness the following signatures and seals, the day and year first above writen. John W. Dodd, (Seal). G. L. J. Dodd, (Seal)."

The plaintiffs virtually admit that if the deed is not fraudulent *per se,* it is not fraudulent in fact. The rule for determining whether a deed is fraudulent *per se* is stated in the third point of the syllabus in the case of *Landeman* v. *Wilson,* 29 W. Va. 703, as follows: "Unless upon an inspection of a deed claimed to be fraudulent upon its face the court sees that the intent of the grantor in executing the deed was to hinder, delay or defraud his creditors, the court cannot hold the deed fraudulent on its face." To make such fraudulent intent appear, it has been settled by a long line of decisions that the grantor must make such reservation in the deed to himself or some one else for his benefit as will enable him to defeat the professed objects of the deed without violating the stipulations thereof. *Horner-Gaylord Co.* v. *Fawcett,* 50 W. Va. 487; *Conway* v. *Stealey,* 44 W. Va. 163; *Bear Sons Grocery Co.* v. *Williams,* 43 W. Va. 323; *Shattuck* v. *Knight,* 25 W. Va. 590; *Clafflin* v. *Foley,* 22 W. Va. 434; *Kuhn* v. *Mack,* 4 W. Va. 186;

*Quarrels* v. *Kerr,* 44 Grat. 48; *Sheppards* v. *Turpin,* 3 Grat. 357; *Laing* v. *Lee,* 3 Rand. 410.

At common law a debtor had the right to prefer one creditor to all others, although the effect of the conveyance might be to hinder and delay others. *Wolf* v. *McGugin,* 37 W. Va. 552, (16 S. E., 797); *Kyles* v. *Harveys,* 25 W. Va. 716; *Hardin* v. *Wagner,* 22 W. Va. 356. This rule is abrogated to some extent by section 2, chapter 74, Code. This section contains the following exception: *"Provided, further,* That nothing in this section shall be taken to prevent the making of a preference as security for the payment of purchase money, or the *bona fide* loan of money or other *bona fide* debt contracted at the time such transfer or charge was made, or as security for one who at the time of such transfer or charge becomes an endorser or surety for the payment of the money then borrowed." The appellants do not rely on the provisions of this section, for the deed was not attacked within four months after its recordation, and the debtor had the right to prefer them by executing a trust deed on the hotel furniture therein named at common law. It is insisted because there was some perishable property included in the deed that this shows it to be fraudulent *per se.* The plain object of the deed, while not permitting the debtor to defeat it, was to permit him to proceed with the hotel business, and presumably, to make the money to pay off his indebtedness. This is admitted in the allegations of the bill. In carrying on the this business, it would be necessary for him to use up the eatables and drinkables on hand, and continually to purchase others to supply the place of those used. Otherwise all the other property would be valueless to him. To cover the things so used, it is provided in the deed that it shall extend over "any property hereafter acquired to take the place of the property herein mentioned." The plain object of these provisions was not to hinder, delay and defraud creditors, but was to keep the security good. The amount thereof being small in comparison with the residue of the property, and the object of including it in the deed being apparent does not render the deed fraudulent on its face. *Skipworth* v. *Cunningham,* 8 Leigh 271; *Lewis* v. *Caperton,* 8 Grat. 148; *Cochran* v. *Harris,* 11 Grat. 348. The extension of its provisions to cover after acquired property,

would be void at law, but is valid in equity. *Horner-Gaylord Co.* v. *Fawcett,* 50 W. Va. 487.

It is also insisted that the deed is fraudulent on its face, because its provisions are so extended as to cover any renewals of the notes secured, thus permitting the indefinite extension of the deed until the property is worn out or destroyed. The deed without so expressing would cover all renewals of the notes until the debt is paid, or the deed released. Hence the expression thereof on the face of the deed did not change its effect. Neither can the notes be renewed nor the time of the deed of trust be extended without the consent of the appellants. The debtor cannot make such extension alone. Hence he is not able to defeat the purposes of the deed, if he adheres to its stipulations without the aid and assistance of those secured thereby. If their claim is just, they will not permit the debtor to defeat the purposes of the trust.

There are some elementary principles of law which counsel have overlooked in their anxiety to misconstrue this deed. First, that the deed should be most strongly construed against the grantor, in favor of the grantee; second, that it must be construed as a whole to effect the ends and purposes thereof rather than to defeat them; third, the validity of the deed will be upheld if possible to do so without doing violence to the intention of the parties thereto; fourth, a strained and unreasonable construction will not be given to the language of the deed for the purpose of holding such deed made with intent to delay, hinder and defraud creditors, when there is no such intent apparent from a reasonable construction of such language. The clause upon which counsel rely to establish the invalidity of the deed is as follows: "It is expressly understood between the parties to this deed that should default be made in the payment of the above mentioned and described notes, or any part of same, or of the interest or any part of same, or of the interest on any renewal or note given in place of same, or of any of the covenants herein mentioned, so as to cause any liability or expense to the said endorsers as aforesaid, then upon written notice of such default, be given to the said Poole, trustee, of such default by the said D. M. Shaffer or J. H. Shaffer, or any one for them, then the said X. Poole, trustee, shall proceed to make sale of the property herein conveyed, etc., etc., etc." The con-

struction that counsel attempt to place upon this clause is that the endorsers are bound to renew the notes indefinitely on the request of the grantor in the deed of trust, and on their failure to do so, they have no right to enforce the deed of trust because of default in payment of the notes, so long as he shows himself willing to renew the same with them as endorsers. This construction is attempted to be sustained by definition and play on the word "or," without regard to the plainly expressed purposes of the deed of trust. As hertofore said, there is nothing in the deed that compels the endorsers to renew the notes. Having the right to refuse to renew the notes, they have the alternative right to require the grantor to pay the notes, or renew them without their endorsement, which is the equivalent of payment, or to require the trustee to make sale under the deed of trust. The plain meaning and import of the language being that when the grantor fails to make payment of the notes or any part thereof, or the renewals thereof, or the interest thereon, when legally requested to do so by the endorsers, they may demand the enforcement of the deed of trust, for by such refusal, the liability for the payment of the notes, or any part thereof, becomes fixed upon them. The endorsers had the same legal right to demand payment of the notes, as they fall due, as they have the right to refuse to renew them. Being under no obligation, moral, legal or equitable to renew the notes, they have the right when they fall due to demand the payment thereof, or that they be relieved from liability, or that the deed of trust be enforced for their relief. The alternatives are against instead of in favor of the grantor in the deed of trust, and he must be prepared to do any or all of the alternatives when legally requested to do so by the endorsers, and the failure to do any of them on their demand renders the trust enforceable. He cannot say to them when the notes fall due, "I am not prepared to pay, but I am ready to renew the notes, and if you do not consent to continue as my endorsers, I will enjoin the enforcement of the deed of trust, if attemtped for your relief." No court of equity would for a moment entertain such an unrighteous plea unless the deed in unequivocal terms required the endorsers to join in a renewal of the notes when demanded by the grantor. There is no such provision in the deed, but counsel in their anxiety to avoid a

deed plainly not meant to delay, hinder and defraud creditors, attempt to imply such provision from the use of the preposition, "or." While their persistency is admirable, and their argument ingenious, and at least convincing to themselves, yet a common sense and disinterested view of the deed as a whole entirely refutes the position assumed by them that the grantor reserved to himself such rights of renewal as enabled him to wholly defeat the purposes of the deed. As we construe the purposes of the deed as a whole, the endorsers were not only not bound to join in the renewals of the notes, but they have both the right to refuse to do so, and the right to require the payment thereof when they fall due, and in default of payment, have the right to insist on the prompt enforcement of the deed of trust for their relief and benefit. This being manifestly the true and only reasonable and legal construction of the deed, the grantor had no power to legally defeat the purposes of the deed except by payment of or satisfaction of the notes thereby secured, and the authorities relied on by the counsel have no application to this case, but they only apply to cases where the grantor reserves the right to wholly defeat the deed, without satisfaction of the debt secured. The *bona fides* of the claim depends on extraneous evidence, and the deed of trust will not be held fraudulent *per se* because of any doubtful provision therein which can be satisfactorily explained by extraneous evidence. If the notes were not given for purchase money or a loan made at the time, but were pre-existing debts, the deed could be held under the statute as executed for the benefit of all creditors, if suit were instituted in time, otherwise, it cannot be disturbed, unless it is fraudulent in fact.

It is also insisted that retention of the possession of the property until default made renders it fraudulent *per se*. Under section 5, chapter 74, Code, recordation takes the place of a change of possession both as to prior and subsequent creditors who have not obtained liens thereon. 14 Am. & En. En. Law, 371. Unless such retention of possession is inconsistent with the purposes for which the deed is executed, it will not invalidate it. *Klee* v. *Ritzenberger,* 23 W. Va. 740; 5 Am. & En. En. Law, (2d Ed.) 987. If it were a general assignment to secure creditors, the retention of possession would have a different effect. 14 Am. & En. En. Law, 369, 371; *Hauck* v. *Herrizman,* 37 Neb.

463. All these matters may tend to show that such deed is *prima facie* fraudulent, and cast upon the beneficiaries the duty of showing the good faith thereof, but they are not of such potency either singly or combined as to render such deed fraudulent *per se.* Whether it is fraudulent in fact depends upon the evidence.

Plaintiffs object to the reading of defendants' depositions for the reason that they were taken before answer filed. This objection does not appear to have been specifically called to the attention of the circuit court, or the objection could have obviated it by allowing defendants to retake them. Such objection must be considered by this Court as waived, especially when the depositions show that the plaintiffs appeared and cross-examined the witnesses as fully as they could have done had an answer been filed. *Long* v. *Perine,* 41 W. Va. 314. The evidence shows that the notes secured were given for money used in the payment for the property included in the deed of trust. The object being to provide the debtor with the means of furnishing and carrying on the hotel owned by the appellants, so that he might out of the business derive the means to pay off such indebtedness. Unless we can establish the rule that an insolvent person cannot borrow money and go into business, and give the lender a lien on the implements and furniture used in such business without being guilty of delaying, hindering and defrauding his creditors, we must hold this trust free from fraud. To hold this deed fraudulent we must believe as stated by JUDGE GREEN, in *Shattuck* v. *Knight,* 25 W. Va. 596, "that the design of the grantor clearly shown by these provisions was when he executed the deed to hinder other creditors, and at the same time not to devote any of his property then owned by him and conveyed in the deed of trust to the payment of the debts professedly secured by it, but to keep possession of it, *and dispose of it as he pleased, and to dispose of the proceeds as he chose.*" The present deed and facts proven evince no such design; on the contrary they show that the debtor was insolvent, or in declining circumstances, and wanted to go into the hotel business to make a living and pay his debts. The appellants rent him their hotel, and agree to become the sureties to the bank to raise the money to furnish the hotel, provided he gives them a lien thereon to secure them. He does so. He

takes the risk of his creditors levying on the property and forc-ing it to sale. He cannot do otherwise than hope that they will not undertake to do that, which injures him and will not bene-fit them. His creditors conceive the notion that because he is allowed by the real purchasers thereof to remain in possession of and use the property in his business that they have the right to seize and appropriate the same because their debts are un-paid, and the trust arrangement between him and his sureties delays, hinders and defrauds them. The property is taken, is sold and sacrificed for less than one-half enough to pay the trust lien thereon. The business is stopped, the debtor is thrown out, and the attacking creditors hold up their hands to receive the remnants of the ruin they have made. But the law steps in and says to them, "You have the right to destroy, but the remnants of the ruined business must go to those who have furnished the means in good faith to establish such business." This is equity, this is justice and is in perfect accord with the intention of the law. While the law recognizes that an insol-vent man is at the mercy of his creditors, yet it endeavors to protect those who extend to him a helping hand, and try to save him and his business from hopeless bankruptcy. "The fact that fraudulent relations are possible is hardly a sufficient reason for denouncing transactions which are not fraudulent." Mr. Justice Brewer in *Etheridge* v. *Sperry*, 139 U. S. 266.

The decrees are reversed in so far as they hold said deed of trust fraudulent as to creditors, and in so far as they direct the payment to the plaintiffs of the sum of $1.105.36, the proceeds of the sale of the hotel furniture, and will be so amended as to direct said sum of $1,105.36 to be paid to the appellants, to be credited on the sum of $2,750.35 due the National Bank of Mar-tinsburg, and as so amended, the decrees will be in all other respects affirmed.

*Modified.*