SWAGER v. SMITH.

(Circuit Court of Appeals, Fourth Circuit. March 14, 1912.)

No. 1,050.

1. Courts (§ 372*)—Federal Courts—State Law—Conclusiveness.

The validity of a deed of trust on personal property to confer a lien on the beneficiary as against the grantor's other creditors in bankruptcy proceedings depends on the law of the state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

State laws as rules of decision in federal courts, see notes to Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.]

2. Bankruptcy (§ 184*)—Deed of Trust—Personal Property—Validity.

Where a deed of trust on the personal property in a hotel covered the contents of the pantry, wineroom, and bar supplies, which the grantor covenanted to keep up to a value of $2,500, and these goods which must perish and were consumed in the use thereof formed a very material part of the property covered by the deed, it was void under the law of West Virginia as against the grantor's other creditors in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 275–277; Dec. Dig. § 184.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. APPEAL AND ERROR (§ 878*)—CROSS-APPEAL.

Mere assertion of error in appellee's brief, where no cross-appeal was taken, was insufficient to confer jurisdiction on the appellate court to review the error alleged.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3573–3580; Dec. Dig. § 878.*]

Connor, District Judge, dissenting.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Philippi, in Bankruptcy.

Action by J. Truman Swager against Harvey F. Smith, as trustee in bankruptcy of William H. Tompkins and another, trading as Tompkins & Geary. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

It appears from the evidence that J. Truman Swager was the owner of a hotel and restaurant in Clarksburg, W. Va., which he occupied and conducted personally. Desiring to discontinue the hotel business, he entered into a contract of the 4th day of April, 1908, with Robert A. Davis, at which time four separate papers were executed: (a) bill of sale of personal effects in consideration of $5,000; (b) a lease upon a rental of $200 per month; (c) an agreement respecting license; (d) a deed of trust—all constituting one transaction and to be delivered on the 1st day of June, 1908. Subsequently Robert A. Davis entered into an agreement with Tompkins and Geary to assign his interest in the Swager hotel, personal property, and real estate. Thereupon new agreements were entered into between J. Truman Swager and William H. Tompkins and John A. Geary, similar to, if not identical with, the original agreements with Davis. Possession of the hotel was retained by Swager until Tompkins and Geary delivered the deed of trust to him. The deed of trust, among other things, included the following: "All the furniture, fixtures and appliances in the bar situated on the first floor of said building and all the stock of liquors, beers, wines and ales." It appears that Tompkins & Geary bought considerable quantities of goods from different wholesale houses, and on the 23d day of October, 1908, a petition in bankruptcy was filed against them, and on the 6th day of November an amended petition was filed, and on the 9th day of January, 1909, they were adjudged bankrupts.

J. Truman Swager proved his claim of $4,000, purchase money secured by his deed of trust, and on April 23, 1909, the trustee filed his exceptions thereto, testimony was taken on behalf of Swager and on behalf of the trustee, and on the 9th day of March, 1910, the referee in bankruptcy sustained the exceptions to the claim of J. Truman Swager for the sum of $4,000, and refused the same as a secured claim and allowed it as a common or unsecured claim, from which J. Truman Swager took an appeal to the District Court, and that court sustained the rulings of the referee. The case now comes here on appeal from the judgment of the court below.

Edward G. Smith, for appellant.
Philip P. Steptoe and Harvey F. Smith, for appellee.

Before PRITCHARD, Circuit Judge, and McDOWELL and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). [1] The question involved in the case at bar was passed upon by this court in the case of Ritchie County Bank v. McFarland, 183 Fed. 715, 106 C. C. A. 153; the court following in that case the decisions of the Supreme Court of West Virginia. That we are governed by the law of that state in this instance in passing upon the validity of the deed of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trust in question is borne out by the following cases: Chicago Bank v. Kansas Bank, 136 U. S. 223–235, 10 Sup. Ct. 1013, 34 L. Ed. 341; Etheridge v. Sperry, 139 U. S. 266–277, 11 Sup. Ct. 565, 35 L. Ed. 171; Dooley v. Pease, 180 U. S. 126–128, 21 Sup. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516–522, 25 Sup. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91–95, 25 Sup. Ct. 567, 49 L. Ed. 956.

[2] Therefore the first inquiry is as to what the courts of West Virginia have had to say in regard to deeds of this character. In the case of Claflin v. Foley, 22 W. Va. 434, the first syllabus is in the following language:

"A deed, conveying a stock of goods and merchandise and notes and accounts of a merchant to a trustee to secure the payment of notes not then due, which provides that said conveyance shall cover 'such goods and merchandise as may be added to said stock, from time to time, by the grantor and brought into the store in course of business or to take the place of such goods as may hereafter be sold,' but does not authorize to take possession or control of said goods until the grantor has made default in the payment of one or more of said notes and has been requested to do so by the holder or holders of such note or notes, is as against the unsecured creditors of the grantor fraudulent and void on its face, although it provides that the 'trustee, by himself or by his agent or attorney, shall at once take possession,' of the notes and accounts transferred by such deed and collect the same for the benefit of the trust creditors."

The learned judge who tried this case in the court below in disposing of the same filed a memorandum, a part of which is in the following language:

"The exact question involved here has been discussed and determined by me in Re Elletson Co. (D. C.) 174 Fed. 859. In that case, speaking of Judge Poffenbarger's very cautious and qualified expression, in Gilbert v. Peppers [65 W. Va. 355, 64 S. E. 361], that 'Bartles & Dillon v. Dodd [56 W. Va. 383, 49 S. E. 414] may possibly be sustained on principle, as the property, except a small portion thereof, was not consumable in its use, nor perishable, nor intended to be sold,' I say, at page 866 of 174 Fed.: 'I do not think the decision in Bartles & Dillon v. Dodd can possibly be maintained in principle for the reasons stated. On the contrary, I think it in direct conflict with the true principles established by very many older cases (such as Shattuck v. Knight, 25 W. Va. 590–600; Landeman v. Wilson, 29 W. Va. 702, 2 S. E. 203; Livesay, Ex'r, v. Beard, 22 W. Va. 585; Claflin v. Foley, 22 W. Va. 434–441; Gardner v. Johnston, 9 W. Va. 403) to which the ruling in Gilbert v. Peppers directly takes us back, as also with those directly established by this Gilbert Case itself.' "

The decision in Bartles & Dillon v. Dodd, 56 W. Va. 383, 49 S. E. 414, while not absolutely overruled by Gilbert v. Peppers, 65 W. Va. 355, 64 S. E. 361, is thereby much weakened in force, and the result is a restoration of the older doctrine, set out in Cochran v. Paris, 52 Va. 348, and quoted as follows in Gardner v. Johnston, 9 W. Va. 408, 409:

"The fact that a deed of trust embraces articles which must perish, or be consumed in the use, before a sale of them can be made according to the terms of the deed, is not one which, of itself, necessarily shows the deed to have been made with a fraudulent design. The amount in number or value of such articles may be so inconsiderable, as compared with the main subjects of the trusts, as to justify the conclusion that they were embraced, through inattention of the parties, to the inconsistency of providing a security

out of property which, from its nature, would necessarily perish before it could be made as means of satisfying the trust. Or the deed may embrace other property, to the improvement, support, or substance of which such perishable property is embraced in the deed, so far from being indicative of a fraudulent purpose, might rather serve to show an honest and provident design and an effort to make the main subjects of the trust a more certain and productive security."

It appears from an inventory made at the instance of the appellant, on the 7th day of November, 1908 (the date that this property was taken in charge by the trustee), that the contents of the pantry, wine-room, and the bar supplies were estimated to be worth $942.41. It is but fair to say that counsel for appellee insist that this property was not worth more than from $200 to $500. However, there is a covenant in the lease to keep this stock up to $2,500, and it may therefore be assumed that a considerable amount of the stock had been disposed of by the bankrupt before the trustee took possession of the same. It is apparent from the evidence in this case (as shown by the two agreements) that the agreement of the bankrupt to use his influence in obtaining a liquor license, while not controlling, should be taken into consideration in passing upon the question as to whether any considerable portion of the property conveyed was of a transitory nature. It undoubtedly shows that the lessee considered the barroom the most important feature in connection with the business in which he was about to engage.

In the case of Ritchie County Bank v. McFarland, supra, this court, in an opinion by Judge Waddill, said:

"We think it is equally well settled by the decisions of the Supreme Court of Appeals of West Virginia that, where property of the same class as last herein stated is conveyed under like conditions and treated in the same way, along with other property of a permanent nature, as here, and the transitory property forms, as it does in this case, a material part of what is conveyed, the deed, as respects both classes of property, is equally void. Gardner v. Johnston, 9 W. Va. 403; Claflin v. Foley, 22 W. Va. 441; Livesay v. Beard, 22 W. Va. 585; Shattuck v. Knight, 25 W. Va. 590-600; Landeman v. Wilson, 29 W. Va. 703, 2 S. E. 203."

In the case at bar it may be that the deed of trust is not void per se; but the evidence adduced before the referee shows that the parties intended, and that, in fact, the stock of consumable pantry and saloon supplies did constitute a considerable part of the property conveyed.

We are of opinion that the court below properly held the deed of trust void.

[3] The appellees, asserting in their brief illegality in the contract between Swager and Tompkins & Geary, ask that this court hold that Swager's claim as a common creditor should be rejected. The appellees have not taken a cross-appeal. Mere assertion of error in an appellee's brief does not give this court jurisdiction to review alleged error against an appellee. Canter v. Insurance Co., 3 Pet. 307, 317, 7 L. Ed. 688; Chittenden v. Brewster, 2 Wall. 191–196, 17 L. Ed. 839; The Maria Martin, 12 Wall. 31–40, 20 L. Ed. 251; The Stephen Morgan, 94 U. S. 599, 24 L. Ed. 266; Clark v. Killian, 103 U. S. 766. 769, 26 L. Ed. 607; Loudon v. Taxing District, 104 U. S. 771, 774, 26 L. Ed. 923; Farrar v. Churchill, 135 U. S. 609–612, 10 Sup. Ct. 771, 34 L.

Ed. 246; Cherokee Nation v. Blackfeather, 155 U. S. 218–221, 15 Sup. Ct. 63, 39 L. Ed. 126; Bolles v. Outing Company, 175 U. S. 263–268, 20 Sup. Ct. 94, 44 L. Ed. 156; Ency. of Pl. & Pr. 157, 514; Stand. Proc. 430.

In view of what we have stated, the ruling of the lower court is affirmed.

Affirmed.

CONNOR, District Judge (dissenting). Eliminating all irrelevant matter, the record, for the purpose of passing upon the assignments of error, presents this case: Truman Swager, prior to April 4, 1908, owned, and personally operated, a hotel and restaurant in the city of Clarksburg, W. Va. Desiring to retire from the business, he, on that day, entered into a contract with one Davis, evidenced by writings, whereby he agreed to sell the furniture of all kinds in, and being used for the purpose of operating, the hotel, for the sum of $5,000 and to execute to him a lease for the hotel building. The purchase price was to be paid in the following manner: $500 paid cash; $500 on June 1, 1908; and $1,000, 6, 12, 18, and 24 months each, after June 1, 1908, with interest from date. For these amounts Swager agreed to accept the promissory notes of the purchaser, payment whereof was to be secured by a deed of trust on all of the property purchased as well as on all the furniture, bar fixtures, appliances and stock of goods to be placed in said building by the purchaser, the bar fixtures and stock of goods was, at all times, to be of the value of at least $2,500, and kept insured for the benefit of the trustee. The parties, on the same day, and as a part of the said transaction, entered into a contract whereby the said Swager promised to use his influence to secure from the city council a license to said purchaser to operate a retail liquor store and saloon in said building. Upon failure to secure such license the contract of sale was to be null and void. License having been obtained, Davis executed a deed in trust to E. G. Smith to secure the balance of the purchase money in accordance with the terms of the contract. The property transferred by said deed is described as follows:

"All of the household and kitchen and dining room furniture, which is in, and has heretofore belonged to the Swager Hotel Building and which is now used as a part of the appliances, furniture and equipment of said hotel, including tables, chairs, sideboard, table linen, together with all the furniture and appliances, beds and bedding in the rooms on the second and third floors of what has heretofore been known as the Swager Hotel Building (as per Schedule No. 1 attached hereto) including all the furniture, fixtures and appliances in the bar, situated on the first floor of said building and all the stock of liquors, beers, wines, ales, and everything which are now in or may hereafter be placed in the said hotel building or business rooms of said building or which may be placed in any of the buildings on the premises."

After declaring the trust, relating to the security of the notes, is the following clause:

"The said trustee is to permit the said parties of the first part to remain in possession of and enjoy the use of the said property herein conveyed until such time as default be made in the payment of the said notes, or any one of them, when they, or either of them, become due and payable and, upon the failure for a period of thirty days, to pay any one of said notes

when it shall become due and payable, then all the notes remaining unpaid shall become due and payable notwithstanding the terms and conditions as appear upon the face of the notes themselves."

Power is given the trustee, upon such default, "when thereto requested by the said J. Truman Swager," to take possession of and sell said property. etc.

On June 10. 1908, Davis, in consideration of $1,500, transferred and assigned to Tompkins & Geary all of his right, title. and interest in the property purchased from Swager; they assuming the payment of the four notes of $1,000 each, executing, for the security thereof, a deed of trust to E. G. Smith containing the same provisions as the one executed by Davis. Swager executed a contract with the purchaser, in regard to obtaining retail liquor license, to the same effect as that made with Davis. The deed of trust was executed, pursuant to the terms, and in substitution of, the deed of Davis, bearing date June 1, 1908. but actually made, delivered. and proven several days thereafter. It was recorded August 13, 1908. That deed contained this additional clause:

"The parties of the first part being engaged in the retail liquor business have therefore the right to sell at retail and replace, from time to time, any of the stock of wines, beers, etc., hereinbefore set out or intended to be included in this conveyance."

On January 29, 1909, Tompkins & Geary were, upon the petition of sundry creditors, filed October, 1908, adjudged bankrupts. Swager offered to prove his debt, being for said notes and amount due on account of rent, against the estate of said bankrupts, as a preferred debt. The trustee in bankruptcy, Harvey F. Smith, filed objections thereto, assigning the reasons set forth in the record. The referee, without finding any specific facts, sustained the objection and permitted him to prove the debt as an unsecured claim. Upon a petition for review this ruling was affirmed by the District Judge. The case was brought to this court for review, etc. The decision of the learned judge below is based upon the opinion that the deed of trust from Tompkins & Geary to E. G. Smith, trustee, is fraudulent and void per se. In his opinion, in the record, he says:

"The exact question involved here has been discussed and determined by me in Re Elletson (D. C.) 174 Fed. 859."

A careful examination of the opinion in that case discloses that a deed in trust conveying personal property, a portion of which was consumable in the use, had been executed for the security of a debt. It further discloses facts, aliunde the deed, upon which the conclusion could, with abundant reason. be sustained, that it was, in fact. made with a fraudulent intent. The process of reasoning and reference to decisions of the Supreme Court of West Virginia indicates, I think, that the judge was of the opinion that the deed was fraudulent per se, and that, in addition thereto, he found conditions and facts which led him to the conclusion, sitting as trier of the fact, that the deed was fraudulent in fact. This court, upon petition for review, evidently treated the decision below as having been based upon a conclusion of law, by the court below. The question was presented and decided here

in Ritchie County Bank v. McFarland, 183 Fed. 715, 106 C. C. A. 153. After stating the facts, this court says:

"The learned judge of the District Court, in an able and elaborate opinion (174 Fed. 859), reviewed the facts and discussed the law applicable to the case. After careful consideration, we concur in and adopt the conclusions reached by him. In our view it is entirely clear that the decisions of the state of West Virginia, as announced in the recent case in the Supreme Court of Appeals of that state of Gilbert v. Peppers, 65 W. Va. 355, 64 S. E. 361, hold that a conveyance of a shifting stock of goods, or of other personal property of a transitory character, and which changes in the use and handling thereof, left in the possession of the grantor, who is allowed to control and dispose of the same at his will, is void per se and on its face, and hence can form no basis as security for payment of a debt. * * * We think it is equally well settled that, by the decisions of the Supreme Court of West Virginia, where property of the same class, as last herein stated, is conveyed under like conditions and treated in the same way, along with other property of a permanent nature, as here, and the transitory property forms, as it does in this case, a material part of what is conveyed, the deed, as respects both classes of property, is equally void."

I have been thus careful to set forth the language used by this court, because I wish to avoid being misunderstood in respect to it. I fully concur in the decision both below and in this court, because I think that the judge below found, as a fact, aliunde the deed, that it was made and used for the purpose of hindering or delaying creditors. The learned judge, concluding his well-considered opinion, referring to the decision in Bartles v. Dodd (to which I will hereinafter refer), says:

"In the Bartles Case the trust deed was only assailed as being fraudulent on its face. Here the trust deed is not only assailed for this reason, but also because it is fraudulent in fact, and, as I have indicated, I think the facts disclosed clearly show it to be so, made as it was to hinder and delay creditors from interfering with this property, while the company carried on business with it for years."

This language separates the case, as an authority, from that before us. Concurring fully with the conclusion reached, a careful examination of the decisions of the Supreme Court of Appeals of West Virginia prevents me from concurring in all that is said in the opinion filed by this court. In saying "that the exact question involved here has been discussed and determined by me in Re Elletson Co.," the learned judge evidently referred to the question of law—the facts were essentially different, as an examination of the opinions and records demonstrate. I, of course, concede that, in this court, we must ascertain whether the West Virginia court has made a controlling and authoritative deliverance upon the subject, and, if so, we must adopt and apply it to this case. The West Virginia decisions constitute the construction placed by that court upon the statute in force in that state to prevent transfers and conveyances made with intent to hinder, delay, or defraud creditors. The statute is essentially the same as that of 13 Eliz. c. 5, and is found in the codes of probably all of the American states. The decisions of the several courts, in respect to its construction in some respects, are not uniform. All concur, however, in holding that, before a deed can be brought under its condemnation, the attacking party must persuade the court that it

was made with the intent to hinder, delay, or defraud creditors. This may be regarded as settled. The line of cleavage is found in those decisions which hold that transfers of a certain class of property with retention of possession and right of disposition are fraudulent per se, and those which treat such transfers and deeds as presumptively fraudulent—leaving the ultimate fact to be determined, either by the court or the jury, according to the jurisdiction in which the question is tried. This case was argued, I think correctly, before us upon the theory that the court below held that the deed of trust from the bankrupts to E. G. Smith, trustee, was fraudulent per se; that is, it was fraudulent as matter of law.

While the opinion filed in this court contains language capable of being construed as an intimation to the contrary, I assume that the decision is based upon the opinion that the deed is per se fraudulent, and that this conclusion is based upon the construction placed upon decisions of the Supreme Court of Appeals of West Virginia. It is from the last conclusion that I respectfully dissent. It must be kept clearly in mind that, as said by Judge Dayton in his opinion in Re Elletson, supra, that the validity of the deed turns, not upon the validity of the debt, but upon the intent of the grantor—and as the invalidating elements named in the statute are in the disjunctive, the existence of either of them is sufficient to sustain the conclusion that the deed is invalid. If the intent of the maker be to appropriate his property to the payment of an honest debt, although in effectuating such intent his plan may, for a reasonable time, have the effect of hindering or delaying his creditors, the deed is valid. If, however, his intent be to provide for his own ease and benefit, to withdraw his property from the reach of his creditors, to use and enjoy it as his own, the scheme or plan is condemned by the statute because of the intent. This, I understand, to be the test. The intent may be ascertained from the terms and provisions of the deed—the character of the property conveyed, the right to retain possession, and the manner of using it, the time and terms upon which the creditor, or his trustee, may take it into possession, subject it to sale, etc., or the intent, when not apparent upon the face of the deed, may be ascertained by reference to evidence of facts and circumstances dehors the deed. In the first instance the court declares, as matter of law, that the language contained in the deed manifests so clearly and indisputably the intent of the grantor that it is incapable of any explanation; the provisions of the deed manifest the intent, hence the court applies the law and declares the deed fraudulent. As is aptly said by one of the judges, the deed is a felo de se. In the second instance, the chancellor sitting as a trier of the fact or the judge, in an action at law, with the aid of a jury, hears relevant evidence in regard to circumstances, conditions, conduct, and declarations of the parties, and ascertains, as a fact, the intent with which the deed was made. In either forum, or mode of trial, the question to be decided is one of fact—the difference between the cases is only as to mode of proof. It is always, primarily, for the court to decide upon which side of the line of separation the instant case falls. The rule by which this is done is well stated by

194 F.—49

the Supreme Court of West Virginia in Landeman v. Wilson, 29 W. Va. 703, 2 S. E. 203, where it is said:

"Unless, upon the inspection of a deed claimed to be fraudulent upon its face, the court says that the intent of the grantor, in executing the deed, was to hinder, delay, or defraud his creditors, the court cannot hold the deed fraudulent upon its face."

This, I think, is the test uniformly applied by the courts. A deed is said to be fraudulent per se when the facts, appearing on the face thereof, necessarily imply the fraudulent intent and are incapable of any explanation to the contrary, in which case it is the duty of the court to declare it fraudulent. Has the court of West Virginia declared that a deed, to which the one before us must be assimilated in principle, is so manifestly fraudulent as to be incapable of any explanation showing that in truth and fact the intent of the maker was to make an honest appropriation of the property to the payment of the debt at maturity? It seems to be conceded, and a careful examination of the leading cases decided by that court discovers, that it has held:

"That if the property conveyed by the deed of trust is of such a character as must be consumed in the use, and, by the provision in the deed, it is not to be sold for a considerable time, and the grantor is to remain in possession of it until the sale, then such deed is per-se fraudulent, for the obvious reason that the postponement of the sale, for a considerable time, and the retention of the possession of such property until the sale, could only have been inserted for a fraudulent purpose and with a view of enabling the grantor in such deed of trust to defeat its declared purpose, as a security for certain specified debts." Green, J., in Shattuck v. Knight, 25 W. Va. 597.

After stating the general principle, the learned justice puts this case:

"When a stock of goods, wares, and merchandise is conveyed in a deed of trust to secure debts, the property not to be sold for a considerable time, if there be any provisions in the deed which clearly indicate that the grantor, when he made it, intended to remain in possession of the property until the day of sale, such deed will be regarded as fraudulent per se precisely as it would have been had there been in it an express provision that the grantor should remain in possession of the goods until the day of sale. If such intention appear on the face of the deed, whether it be express or implied is entirely immaterial." Id.

This, I think, is in accordance with the weight of authority in this country, although a number of courts of eminent respectability hold that the conditions described in the opinion constitute a presumption of fraud, leaving the ultimate fact—the intent—to be found by the court or jury upon the entire evidence. It is generally held that, quoad present indebtedness, if the grantor is insolvent at the time of making the deed, the presumption is practically conclusive. So far as I have been able to investigate, the doctrine of Shattuck's Case was the settled law of West Virginia, where the property conveyed was a stock of goods and merchandise. It may be that, in some of the cases, not available to my investigation, it was extended to deeds conveying both consumable and nonconsumable property. In Claflin v. Foley, 22 W. Va. 434, a stock of merchandise was the subject-matter of the controversy. It seems that this was the settled law until Conaway v.

Stealey, 44 W. Va. 163, 28 S. E. 793, was decided. It is suggested that, in this case, the former decisions were, in some measure, departed from. I regret that I have not access to this case, but I note that Mr. Justice Brannon, in his concurring opinion in Horner-Gaylord Co. v. Fawcett, 50 W. Va. 487, 40 S. E. 564, 57 L. R. A. 869, referring to the Stealey Case, says:

"In that case the provision for the possession, replenishment, and sale of the stock was not, as it is in this case, on the face of the trust, but an oral agreement outside of the trust."

It would seem that the question, now under discussion, was not presented. Of course, when the fact was disclosed, the court, under Shattuck's Case, would hold the deed fraudulent. In Horner-Gaylord Co. v. Fawcett, supra, there was a departure from the former decisions. The question presented here does not invite a discussion of the reasons upon which that decision is based. There is no suggestion that the older decisions are overruled. The learned justice, writing for the court, in a carefully prepared opinion, points out the respects in which he distinguished the case from former decisions. As we shall see, that and the Stealey Case have been expressly overruled. The next case in order is Bartles v. Dodd, 56 W. Va. 383, 49 S. E. 414. There, a hotel equipment was sold and, to secure the purchase price, the purchaser executed a deed of trust transferring the property purchased, together with "any property that may be hereafter acquired to take the place of the property herein mentioned." The notes secured ran from 60 days to 4 months. Provision was made for their renewal, and that the grantors should retain possession until default, etc. Dent, J., says:

"It is insisted, because there was some perishable property included in the deed, that this shows it to be fraudulent per se. The plain object of the deed, while not permitting the debtor to defeat it, was to permit him to proceed with the hotel business and presumably to make the money to pay off his indebtedness. This is admitted in the allegations of the bill. In carrying on this business, it would be necessary for him to use up the eatables and drinkables on hand and continually to purchase others to supply the place of those used. Otherwise all the other property would be useless to him. To cover the things so used, it is provided in the deed that it shall extend over any property hereafter acquired to take the place of the property herein mentioned. The plain object of these provisions was not to hinder, delay, or defraud creditors, but was to keep the security good. The amounts thereof being small in comparison with the residue of the property, and the object of including it in the deed being apparent, does not render the deed fraudulent upon its face."

This language is sustained by the citation of a number of decisions of the Court of Appeals of Virginia. Other points are discussed, but the foregoing is the crux of the decision. The opinion concludes:

"To hold this deed fraudulent, we must believe, as stated by Judge Green in Shattuck v. Knight, 25 W. Va. 596, 'that the design of the grantor, clearly shown by these provisions, was when he executed the deed, to hinder other creditors and at the same time not to devote any of his property, then owned by him, and conveyed in the deed of trust, to the payment of the debts professedly secured by it, but to keep possession of it as he pleased and to dispose of the proceeds as he choose.' "

It will be noted that this opinion was written by Judge Dent for a unanimous court. He also wrote the opinion in the Fawcett Case, supra, to which Judge Brannon gave a cautious and guarded assent. The decision in the Dodd Case does not rest upon either the process of reasoning or the distinguishing features relied upon in the Fawcett Case. It is securely rested upon the Shattuck Case in so far as the facts are similar. The facts in the Dodd Case are strikingly similar to the case before us. They fall, naturally, into the same class, and I think should be decided by the application of the same principles. Has it been overruled? In Gilbert v. Peppers, 65 W. Va. 355, 64 S. E. 361, a stock of goods and merchandise was sold for $2,000 of which sum $200 was paid cash and for the balance 36 notes, running from 60 days to 4 months, were given. For their security, a deed of trust was executed transferring the same property and after-acquired goods. Without extending the recital of facts therein, I think the deed came clearly under the condemnation of Shattuck's Case and probably could have been saved by the decision in Fawcett's Case. The court, through Judge Poffenbarger, says:

"Until a comparatively recent date, this court held all deeds of trust on stocks of mercantile goods, allowing the debtor to remain in possession of the property and sell and dispose of the same, fraudulent and void per se" —citing Shattuck v. Knight, supra, and other decisions of the court.

After quoting from the opinion of Judge Green, the language quoted herein, other opinions, and Bump on Fraudulent Conveyances, the learned judge says:

"For a great many years, the doctrine of our cases cited has been adhered to by this court, but in Conaway v. Stealey the rule of the Iowa Supreme Court, as recognized in Etheridge v. Sperry, 139 U. S. 266 [11 Sup. Ct. 565, 35 L. Ed. 171], was adopted and a departure so made."

After pointing out why the case of Kreth v. Rogers, 101 N. C. 267, 7 S. E. 682, cited in Etheridge's Case, could not be treated as authority in West Virginia, he says:

"Conaway v. Stealey was followed in two later cases, Horner-Gaylord Co. v. Fawcett and Bartles v. Dodd. These decisions do not wholly repudiate the doctrine of the earlier cases."

After a discussion of the grounds upon which the Stealey and Fawcett Cases were decided, none of which I respectfully submit, was relied upon or suggested in the Dodd Case, the learned judge says:

"Much as we regret to disapprove and overrule decisions of this court, we are constrained by the weighty reasons of public policy which, centuries ago, impelled the passage of the statutes against fraudulent conveyances, to overrule Conaway v. Stealey and Horner-Gaylord Co. v. Fawcett."

But for the length of this opinion, I would quote, in full, the language of the judge, showing that the reasons which impelled the court to overrule the cases named do not apply to the Dodd Case. He concludes with these significant words:

"Bartles & Dillon v. Dodd may possibly be sustainable on principle, as the property, except a small portion thereof, was not consumable in its use, nor perishable nor intended to be sold."

Judge Brannon, concurring, explains his position in the Fawcett Case, but omits any intimation that he doubts the correctness of the Dodd Case in the decision of which he concurred.

I have, thus, I fear at unpardonable length, traced the current of decisions of the Supreme Court of Appeals of West Virginia upon the question with which we are confronted upon this record. A somewhat careful examination and frequent resort to the opinions of that court, while in another sphere of judicial work, has brought me to a profound respect for their well-considered conclusions, their exhaustive research, and great learning. Both inclination and duty impel me, in this case, to adopt the decision of that court. I fully appreciate the force of the reasoning and the wisdom of the policy upon which the Supreme Court of West Virginia rests these decisions. It is probable that several of the courts which treat such deeds as presumptively fraudulent are influenced by constitutional and statutory provisions narrowing the power of the courts to find conclusions of fact—compelling them to submit every issue of fact to a jury. This may explain the reason for the divergence of method of ascertaining the intent. However this may be, my difficulty in concurring with the opinion of the majority here does not arise out of a difference of opinion with the court of West Virginia, but a difference of opinion, with this court, in regard to what that court has decided. I am of the opinion that, although the decision in Bartles v. Dodd, while much weakened as an authority, is not overruled by the decision, or the opinion, in Gilbert v. Peppers, supra. I cannot foresee what that learned court may hereafter decide in regard to that case, but I do not think that I can be mistaken in holding that it has not yet overruled it. The learned judge, writing for a unanimous court, carefully distinguished between the two cases which were overruled and the one which was not. He further says that the Dodd Case may be sustained "on principle" because of the existence of the very facts and features found in this case. This, I submit, falls very far short of overruling the case. When we examine the facts in the Fawcett Case and Gilbert v. Peppers, and the process of reasoning adopted by the court, it appears to my mind that one of two conclusions is irresistible, either the decision in Bartles v. Dodd is the last controlling and authoritative deliverance of that court and should be applied here, or that there is no controlling and authoritative declaration of the law of that court which we are required to or can safely follow. In the condition last named, I assume that we should first look, for guidance, to the decisions of the Supreme Court of the United States, and, in default of finding it, we should carefully examine the decided cases of other state and federal courts, discussions of the most reliable text-writers and, with their aid, adopt that conclusion which is most consonant with sound policy and "the reason of the thing." While, necessarily, any decision of the Supreme Court of the United States would, to some extent, be controlled by the local law of the state from which the case comes, I think that we find in the language of Mr. Justice Brewer, in Etheridge v. Sperry, 139 U. S. at page 278, 11 Sup. Ct.

at page 569, 35 L. Ed. 171, a safe principle. After discussing the law, as held by the courts of Iowa, he says:

"If the question were an open, or a new one, unaffected by any settled law of the state, we incline to the opinion that the question is not one of law, so much as it is one of fact and good faith."

In this record it appears that oral evidence was taken by the referee. There was a sharp and decided conflict between several of the witnesses in regard to essential matters—the value of the nonconsumable property, the value of the wines and liquors on hand when the property passed into the possession of the trustee (it was shown that at the date of the deed there were none on hand), the reasons for not recording the deed promptly, the notice which the attacking creditors had of the situation—all of their debts were contracted subsequent to the date of the deed, etc., all of which were, I think, material to a correct decision of the question of the intent of the maker. For instance, the appellant insists that the schedule shows that the property transferred, including the lease, was worth $5,990.36 and of this only 6 per cent. was consumable, or property to be sold and replenished. This is controverted by appellee. My purpose in referring to the evidence is not to express an opinion in regard to it, but to point out the danger of doing injustice by holding the deed to be per se fraudulent. If, upon hearing and considering the evidence, the referee had found as a fact that the deed was made with a fraudulent intent, and the learned district judge had affirmed his finding, I should, in the absence of controlling reasons to the contrary, have concurred with his conclusion. The danger which, I think, confronts the court in holding that a deed conveying both consumable and nonconsumable property fraudulent per se, or of making the holding to depend upon the question whether the former constitutes a considerable or inconsiderable portion of the whole, is found in the cases to which our attention is called. The diligent counsel for appellant informs us that the record shows that in the Elletson Case it was 31.8 per cent., in the Peppers Case 32 per cent.—here 6 per cent. I cannot but think that the Supreme Court of West Virginia will, when finally settling the principle to control in classifying deeds of trust, hesitate to adopt a rule so uncertain, variable, and dependent upon the differing views of courts regarding what percentage of consumable property is material or immaterial, considerable or otherwise. This is a question in regard to which, there will be "many men of many minds." In dealing with both property rights and questions affecting the integrity of the citizen, courts should endeavor to prescribe, with as much certainty as possible, a "rule of action" for their guidance. I submit that it is but just to that learned court to think that it will "blaze" a plain pathway in which the citizen may walk with safety in respect to his honor and his property. I confess that I am partial to the ancient way of submitting such questions to the decision of a jury.

I have, at unusual length, set out my reasons for thinking that, following the decisions of the Supreme Court of West Virginia, or, if by reason of their unsettled condition, we must look elsewhere for guid-

ance, the deed from Tompkins & Geary to E. G. Smith, trustee, was not fraudulent per se. I think that the intent should have been found, after an examination of the testimony, of course taking into consideration the provisions of the deed. I concur in the opinion that other questions discussed in appellee's brief are not raised upon the record.