## UNITED STATES v. LANKFORD et al.

(District Court, E. D. of Virginia. November, 15, 1924.)

**1. Fraudulent conveyances ⬥47 — Chattel mortgage not "sale, transfer, or assignment," within Bulk Sales Act.**

A chattel mortgage is not a "sale, transfer, or assignment," within the meaning of the Bulk Sales Act of Virginia (Code Va. 1919, § 5187), but until payment or foreclosure the relation of the parties is that of debtor, on one side, and creditor, secured by a lien, on the other.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Sale.]

**2. Chattel mortgages ⬥190(1)—Provision authorizing mortgagor to sell and take the profits renders mortgage void.**

Under the law of Virginia, as declared by its Supreme Court of Appeals, a chattel mortgage or deed of trust of personal property, which is in its nature susceptible of general sale as merchandise, containing a provision authorizing the grantor to remain in possession and take the profits, is equivalent to a provision giving the right of sale, and renders the mortgage or deed void.

**3. Chattel mortgages ⬥219—Rendered invalid as against creditors by sales by mortgagor with knowledge of mortgagee.**

A deed of trust covering personal property salable as merchandise is rendered invalid as against creditors by sales made from the prop-

erty by the grantor with the consent of the grantee.

**4. Chattel mortgages ⬤=74 — Mortgage void as to part of property covered held void in entirety.**

Under the law of Virginia as established by its Supreme Court of Appeals, which governs in the federal courts, a deed of trust which is void as to part of the property covered because of sales permitted or made by the grantor is void in its entirety.

In Equity. Suit by the United States against Menalcus Lankford, trustee, and others. Decree for complainant.

Lester S. Parsons, Asst. U. S. Atty., of Norfolk, Va.

Wolcott, Wolcott & Lankford, Harry K. Wolcott, and Menalcus Lankford, all of Norfolk, Va., for E. Hogshire, Son & Co., Inc.

Richard H. Baker, of Norfolk, Va., for Merchants' & Mechanics' Sav. Bank.

GRONER, District Judge. This is a suit by the United States to set aside and annul a deed of trust executed by E. Hogshire, Son & Co., Inc., to Menalcus Lankford, trustee. There is no suggestion from beginning to end of any actual fraud, and the evidence discloses beyond peradventure that the deed of trust was taken by the bank in good faith, but to secure a pre-existing indebtedness. The circumstances, briefly, were these:

The Merchants' & Mechanics' Savings Bank had been financing Hogshire for a long number of years. Apparently, some time about the beginning of the war, Hogshire, whose business was that of shipchandler, with stores at Norfolk and Newport News, obtained a government contract for the furnishing of supplies to government vessels, and required a large amount of money to carry on its business. The bank advanced the money and took an assignment of the payments due from the government; that is to say, the government checks as they were received were delivered to the bank and applied to the payment of the indebtedness. The government, at some period which is not disclosed in the evidence, canceled the contract, and left Hogshire with a considerable stock of marine supplies on hand and with an indebtedness to the bank of between $20,000 and $25,000. The bank, desiring to secure itself for this indebtedness, and desiring also to create a security upon which it might safely advance other money, took the deed of trust from Hogshire, in which was conveyed certain des-

ignated supplies located in the stores at Norfolk and Newport News, and in addition several motor trucks and motor boats used in the business.

At the time the deed of trust was executed, and for two or three years prior thereto, Hogshire had been steadily going behind; its losses for the three-year period aggregating considerably over $100,000. After the execution of the deed of trust the Newport News store was closed, and so continued up to the bringing of this suit. The supplies in the Norfolk store conveyed in the deed of trust were attempted to be identified by placing in the racks containing them little tags, about two inches in size, on which were typewritten the words "Surplus Stock D. T." The deed of trust contained the usual provisions applicable to such instruments in use in Virginia, and among other things provided that the grantor should remain in peaceable possession and take the profits thereof to its own use until default, etc., in the debt. About the time of the execution of the deed of trust one of the government revenue agents came to the place of business of Hogshire for the purpose of making an audit of its books, but at Mr. Hogshire's personal request, and upon his statement that that was a particularly busy season, inspection was delayed until the following fall. When finally made, it showed an indebtedness to the government on account of income taxes of approximately $200,000, which, together with interest and penalties, amounted to approximately $250,000.

The government claims that the deed of trust is void and of no effect, first, because it falls within the provisions of section 5187 of the Code of Virginia (1919), known as the "Bulk Sales Act"; and, secondly, because under the law in Virginia a deed of trust of chattel property, in which the grantor reserves the right to remain in possession and enjoyment of the property conveyed until default is made in the payment of the debt secured, and such reservation is inconsistent with the purposes of the conveyance and adequate to defeat them, is fraudulent per se.

[1] I have given as careful consideration as the time at my disposal has permitted to the questions thus raised, and I am of opinion, first, that section 5187 of the Code is not applicable. This act provides that "the sale, transfer or assignment in bulk of any part or the whole of a stock of merchandise, * * * otherwise than in the ordinary course of trade, * * * shall be void as

against creditors of the seller, * * * " unless the seller and purchaser shall do certain things, among which is the preparation of a list of creditors and their addresses, together with personal notification to the creditors, etc. Admittedly, none of these things required to be done were done in this case.

The Bulk Sales Act has been adopted in a great many states, and there is some conflict as to the application of the act to what is commonly known as a chattel mortgage. The difference between the cases that hold that the act applies to chattel mortgages and those that hold that it does not apply appears to rest upon the question as to whether or not title passes to the goods conveyed under the mortgage or trust. In the cases holding that title remains in the mortgagor, it has been generally held that a chattel mortgage is not a "sale, transfer or assignment." In those states in which it has been held that title does pass by the deed of trust or mortgage, the act has been held to apply.

While it is true that there is no Virginia decision directly on this point—that is to say, construing the effect of the act itself—the case of Hale v. Horne, 21 Grat. 112, it seems to me, is conclusive of this question. This was a contest between a deed of trust creditor and a judgment creditor, and in passing upon the title or interest acquired by the purchaser of property subject to a deed of trust the Supreme Court of Appeals of Virginia uses the following language:

"What interest had William M. Mitchell in the lands after he gave a deed of trust? Whatever interest he had was liable for his other debts. The whole of a man's property is liable for his debts. A mortgage is regarded in equity as a mere security for the debt, and only a chattel interest. And until a decree of foreclosure, the mortgagor continues the real owner of the fee, and may lease, sell, and in every respect deal with the mortgaged premises as owner. The equity of redemption is descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. * * * It was entirely competent, therefore, for Mitchell, after the conveyance of his land in trust for the payment of debts, to make an absolute conveyance of them to Nuckols and Gregory. And his deed was good to pass title to them, subject, however, to the incumbrance of the deed of trust. And after the payment of the whole of the debts secured by the deed of trust, the grantor and his ven-

dees, by operation of the statute, are entitled to hold the land, at law or in equity, notwithstanding a conveyance has not been made by the trustee."

The conclusion, therefore, that I have come to, is that a chattel mortgage is not an instrument of sale, transfer, or assignment, and that until payment or foreclosure the relation of the parties is that of debtor, on one side, and creditor, secured by a lien, on the other.

[2] As to the second point: The deed on its face contains the following provisions:

"Witnesseth that the said E. Hogshire, Son & Co., Incorporated, doth hereby grant with general warranty unto the said Menalcus Lankford, trustee, the following personal property, to wit:

"One gas boat, named Dispatch 2d, 61 feet in length, 4 foot beam, 3 foot draft, 200 horse power Speedway engine.

"One gas boat, named Eva Lee, 45 feet in length, beam 12 feet, draft 4 feet, 40 horse power.

"One gas boat, named River Queen, length 45 feet, beam 10 feet, draft 3 feet, 40 horse power Lathrop engine.

"One Reo truck, factory No. 68184.

"One Reo truck, factory No. 68191.

"One Autocar truck, two-ton, factory No. 32958, motor No. 23534.

"One G–M–C truck, two-ton, factory No. 412892.

"One coupé (Ford make), factory No. 5,602,115.

"One coupé (Ford make), factory No. 5,616,158.

"Together with a lot of machinery, motors, and equipment contained in storage and located on the second and third floors at No. 133 West Main street, Norfolk, Virginia.

"All of said property being inventoried and a copy of said inventory being hereto annexed and made a part hereof, the said machinery, motors, and equipment being segregated and marked for identification and located as hereinabove set out.

"And also the following personal property located and stored on the first, second, and third floors of the storehouse of the party of the first part numbered 133 West Main street, Norfolk, Virginia, the said property being fully set out in an inventory of same hereto annexed and made a part hereof; said inventory being dated as of July 21, 1923, and the inventory being on pages numbers 1, 2, 3, 4, 5, 6, 7, 8, 9, and 10; all of said property being segregated

and marked for the purpose of identification.

"And also the following personal property located on the first and second floors of the building located at Twenty-Third street and West avenue, Newport News, Virginia, in the storehouse of the party of the first part, said personal property being that as set out in an inventory of July, 1923, hereto attached, being shown on pages numbers 1, 2, 3, 4, 5, 6, 7, 8, and 9 thereof, and so marked, said property being segregated and marked for the purpose of identification.

"In trust to secure to the Merchants' & Mechanics' Savings Bank of Norfolk, Virginia, the payment of a certain negotiable, promissory note bearing even date herewith, said note being payable on demand and calling for the principal sum of fifty thousand ($50,000.00) dollars, together with interest from its date at the rate of 6 per centum per annum, said interest to be payable annually, the said note being signed by E. Hogshire Son & Co., Incorporated, by its president, and its corporate seal being thereunto affixed and attested by its secretary, and the said note being countersigned for the purpose of identification only by the said Menalcus Lankford, trustee, said note being payable to the said Merchants' & Mechanics' Savings Bank and waiving the homestead exemptions of makers and indorsers, and also to secure any note or notes, or bond or bonds, that may be given in renewal or curtail of said indebtedness, or any part thereof, and upon further trust that the said grantor shall remain in quiet and peaceable possession of the above granted and described personal property, and take the profits thereof to its own use, until default be made in the payment of the debt aforesaid, in whole or in part, or of the interest thereon, or any part thereof or in the observance of any covenant in this deed contained, and upon such default being made the said trustee shall, so soon thereafter as he shall be requested by the creditor hereby secured so to do, sell the above granted personal property at public auction," etc.

As was stated in the forefront of this memorandum, the deed of trust was given in good faith, though to secure a pre-existing indebtedness, but likewise to secure future advances, if any should be made, but none were made. The property conveyed consisted in part of automobiles and boats, nonperishable in their nature, and in part of merchandise, the greater portion of which is described as contained in the two storehouses of the grantor, located in Newport News and Norfolk. The understanding between the parties was that the property would be segregated or earmarked in such a way as to make it susceptible of identification, and that, if sold, the proceeds thereof would be paid over to the bank as a credit on the indebtedness of the grantor. A considerable portion of the mortgaged property was in fact sold, and the grantor testified that to this end he listed a large portion of it, and sent these lists to people engaged in businesses requiring merchandise of this character, with the object and purpose, if successful, of paying the debt. He did succeed in selling one lot, aggregating in value several thousand dollars, and a part of the money due thereon has been paid and is in the hands of the trustee, and a part has not yet been collected. The property thus sold was withdrawn about equally from the Norfolk and Newport News stores.

In addition to this, the evidence shows, I think, that other merchandise conveyed in the deed of trust was in fact sold, since it is now nonexistent. A personal inspection of the Norfolk store of the grantor, which I made in the interest of clarification, developed that the attempted segregation, which to some extent at least was left to the stock clerk, was largely imaginary. Approximately 50 per cent. of the general stock of merchandise was conveyed under the mortgage and approximately 50 per cent. was free of the mortgage. That which was conveyed, together with that which was not conveyed, was left on the racks or partitions in the storeroom of the grantor and small paper tags, with the legend "Surplus Stock D. T.," were placed in these racks; but the evidence impels the conclusion that even this method of segregation was inadequate and unavailing, since the tags were found indiscriminately in the racks and apparently applicable to the free property equally with that conveyed in the mortgage.

Without regard to these facts, however, it seems to me the validity of this mortgage under the Virginia law is foreclosed against the mortgage creditor by the decision of the Supreme Court of Appeals of Virginia in Gray v. Atlantic Trust Co., 113 Va. 580, 75 S. E. 226. In that case an exhibitor at the Jamestown Exposition, then in possession of an allotted space in one of the exhibit buildings, borrowed $1,000 from a Norfolk bank and undertook to secure its repayment by a mortgage on the personal property included in the exhibit. In that case the deed of trust recited:

"The said party of the first part doth grant unto the said trustee the following property, to wit: All that certain exhibit stock of china, glassware, pottery, and similar articles, now situate, lying, and being in that section of the Liberal Arts and Manufactures Building of the Jamestown Tercentennial Exposition, in the county of Norfolk, in the state of Virginia, * * * and upon the further trust that the said grantor shall remain in quiet possession of the above granted and described property, and take the profits thereof to his own use, until default is made in the payment of the debt aforesaid," etc.

It will be observed at a glance that the provisions of the two mortgages are identical. There, as here, the mortgage was shown to have been made in good faith, and there, unlike here, for a present consideration. The Court of Appeals held that the issue, namely, the invalidity of the deed, because fraudulent per se, was not a question of fact, but a question of law, to be determined by judicial construction of the deed itself, and after a full discussion of previous cases concludes as follows:

"In the case now in judgment the reservation in the deed in favor of the grantor is that he shall remain 'in quiet and peaceable possession of the above granted and described property, and take the profits thereof to his own use, until default is made in the payment of the debt aforesaid,' etc.; while the very nature of the property conveyed— 'stock of china, glassware, and similar articles, now situate, * * * constituting the exhibit of the said Charles M. Rosenthal in said building at said exposition'—would exclude any idea of profits to inure to the grantor, other than such as he might realize from a sale or sales of the property, which was the construction put upon the reservation and actually pursued by the grantor. It will not do for the beneficiary in the deed to say that the sales made by the grantor were without its knowledge, and were made contrary to an agreement between him and the trustee, or the beneficiary in the deed. The question is: Did the deed reserve to the grantor the power to make the sales, and thereby defeat the purposes of the deed? In other words, were the agreements or conditions contained in the deed of trust of such a character that, if carried out, they would be sufficient to defeat the purposes of the deed, independent of what the intention of the parties might have been by reason of some extrinsic agreement? As we view the language of the deed, in the light

of the authorities to which we have adverted, such powers and control of the property conveyed were reserved to the grantor therein as were adequate to defeat the avowed purpose of the trust, and therefore the deed is fraudulent per se."

The effect of this decision is to hold that in any deed of trust of personal property which is, in its nature, susceptible of general sale as merchandise, a provision in the deed authorizing the grantor to remain in possession and to take the profits is equivalent in itself to a provision granting a right of sale, since in the nature of things there could be no profits except in a sale. The decision last quoted was followed by Boice v. Finance Corporation, 127 Va. 563–576, 102 S. E. 591, 595 (10 A. L. R. 654) in which the court said:

"While the mortgage stipulates expressly against sale, conversion, or removal of the automobiles without the written consent of the guaranty company, the stipulation was waived if its violation was knowingly permitted by the guaranty company. It is not expressly stated in the agreed statement of facts that Carr, the agent of the guaranty company, had knowledge of the fact that the automobile was placed in the salesroom of Gordon for the purpose of sale, or that he knew of Gordon's methods of making his purchase and sales of automobiles, but we regard these facts as proper, if not necessary, inferences from the facts agreed. The knowledge of Carr was thus obtained in the course of his employment, and is chargeable to his principal. The guaranty company, in taking the mortgage under such circumstances, can stand on no higher footing than one who sells to a retailer and gives him the power of sale to his customers, or who accepts a mortgage containing provisions adequate to defeat its purpose."

[3] In this last-mentioned case the Virginia court apparently holds that, though the deed itself forbids a sale, if the creditor secured knew, or in the exercise of ordinary care ought to have known, that its terms were, or in the nature of things would be, violated, the deed would be held invalid as against creditors. It would seem to me, therefore, that the deed must be held void, because of the reservations heretofore adverted to contained upon its face, and likewise must be held void because of the fact that a part of the property conveyed was in fact sold, with the bank's consent, some in bulk and some in the ordinary course of business.

[4] This leaves for determination the question whether the mortgage is wholly void, or void only as to that portion of the property conveyed which is contained in the Norfolk store. It has already been stated that as to the Newport News store the same was closed and locked, and so continued from the execution of the deed of trust until the bringing of the suit. It is true some of the property conveyed, and contained in the Newport News store, was removed therefrom and sold, but this sale was with the consent of the holder of the mortgage, and with the agreement that the proceeds should be paid upon its debt. There was no sale by retail nor conduct of the business, so far as that store was concerned. The same is true as to the motor trucks and gas boats.

In two decisions of the Circuit Court of Appeals of this circuit it was held, under the West Virginia law, that where property of a transitory character was conveyed in a deed of trust, and left in the hands of the grantor authorized to sell the same, the conveyance was void in its entirety, though it also covered other property of a permanent nature. See Ritchie Bank v. McFarland, 183 F. 715, 106 C. C. A. 153, and Swager v. Smith, 194 F. 762, 114 C. C. A. 482. Both of these cases turn upon the applicable West Virginia law, and in both of them the decisions are predicated upon what was understood to be the interpretation of the law by the Court of Appeals of West Virginia. Whatever may have been the state of the law at the time of the decisions in question, there is no doubt that at the present time the West Virginia law has been decided by the highest court of that state differently. See Schmulbach v. Henaghen (decided in 1914) 73 W. Va. 682, 80 S. E. 1107. In that case there was a mortgage covering furniture and fixtures and a stock of liquors, and it was there held that the deed, as to the furniture and fixtures or other non-perishable property, was not void per se because it also covered perishable property, though left in the hands of the grantor until default in the payment of the debt or until sold.

The rule thus announced seems to me to be consonant with justice, especially where, as in the case at bar, there is no allegation or suggestion of actual fraud. But apparently the question is no longer open in Virginia by the decisions of the Supreme Court of Appeals of this state construing and establishing the law in this state to the contrary. See McCormick, Trustee, v. Atkinson, 78 Va. 8, and Hughes, Effinger & Co.

v. Epling, 93 Va. 424, 25 S. E. 105. In the first of these cases the deed of trust conveyed a stock of goods and the fixtures in a store, and was held void as to everything conveyed. The question of the validity of the deed as to the fixtures was brought sharply to the attention of the court in the petition for appeal. So it seems unlikely that the court, though not specifically passing upon the question, had overlooked it. In the Epling Case the deed conveyed a stock of merchandise, together with the fixtures in two storehouses, "such as showcases, stoves, and safes, and also a horse and buggy," and there again the deed of trust was held fraudulent per se and null and void.

In the case of Swager v. Smith, supra, the Circuit Court of Appeals of this circuit said: "That we are governed by the law of that state in this instance in passing upon the validity of the deed of trust in question is borne out by the following cases"—citing Chicago Bank v. Kansas Bank, 136 U. S. 223–235, 10 S. Ct. 1013, 34 L. Ed. 341; Etheridge v. Sperry, 139 U. S. 266–277, 11 S. Ct. 565, 35 L. Ed. 171; Dooley v. Pease, 180 U. S. 126–128, 21 S. Ct. 329, 45 L. Ed. 457; Thompson v. Fairbanks, 196 U. S. 516–522, 25 S. Ct. 306, 49 L. Ed. 577; Humphrey v. Tatman, 198 U. S. 91–95, 25 S. Ct. 567, 49 L. Ed. 956.

Under these circumstances, I am reluctantly compelled to declare the entire deed of no effect as against the government's claim for taxes, levy for which has been duly made.